# CHARLESTON.

SWEARINGEN *et al v.* STEERS *et al.*

Decided March 23, 1901.

1. EQUITY JURISDICTION—*Mining Lease—Accounting.*

   If the rent or royalty reserved in the leasing of mineral property is dependent upon the amount of mineral taken, a bill in equity will lie to compel an accounting by the operators or lessees of the mines. (p. 314).

2. PARTIES TO ACTIONS AT LAW—*Equity.*

   A person, though acting in different capacities, cannot be both plaintiff and defendant in an action at law, though joined with others. The rule is otherwise in equity, which alone can afford a remedy in such cases. (p. 315).

Appeal from Circuit Court, Wood County.

Bill by C. A. Swearengen and J. W. Vandervort against Thomas J. Steers and others. Decree for defendants. Plaintiffs appeal.

*Reversed.*

J. W. VANDERVORT, for appellants.

V. B. ARCHER and WILLIAM BEARD, for appellees.

DENT, JUDGE:

C. A. Swearingen and J. W. Vandervort filed a bill in chancery against Thomas J. Steers and others in the circuit court of Wood County. The bill was dismissed on demurrer and plaintiffs appeal.

The facts necessary for determination of this controversy as set out in the bill and admitted by the demurrer are as follows: About the 1st day of October, 1895, plaintiffs C. A. Swearingen and defendants F. E. Waterman, L. B. Dellicker, Edward Nelly, William Boswell, A. B. White and Thomas J. Steers entered into a mining co-partnership to secure leases and operate for lead and zinc near Joplin, Mo. Thomas J. Steers was to secure the leases and operate the same, and the other partners were to furnish money to the amount of two thousand dollars, to be divided into shares at the rate of fifty dollars per share. F. E. Waterman sub-

scribed for five shares, L. B. Dellicker, ten, Edward Nelly, five, C. A. Swearingen ten, William Boswell five, and A. B. White five shares. C. A. Swearingen sold two and one-half shares to the plaintiff J. W. Vandervort. Thomas J. Steers secured a forty-acre lease, which proving non-productive, was temporarily abandoned. In the mean time he acquired a thirty-eight acre lease at the rate of twenty per cent. royalty, ten per cent. to go to the landowners, and ten per cent. to original lessee, George W. Lear, the one-half of the last ten per cent. royalty or five per cent. said Steers represented was acquired for the mining company or syndicate. Said Steers in partnership with said L. B. Dellicker entered into an arrangement by which they undertook to operate said thirty-eight acre lease and pay the twenty per cent. royalty, to which the same was subject according to the terms of the original lease, and thus agreeing to pay ten per cent. royalty to the land owner, five per cent. royalty to George W. Lear, and five per cent. royalty to the syndicate of which they were members. Thomas J. Steers had charge of and managed all the operations, kept the accounts and received the funds. The plaintiffs in behalf of themselves and other members of the syndicate demanded an account of the five per cent. royalty secured to them. Steers furnished an account for the year 1896, showing the gross production of the lease to have been about fifteen thousand five hundred and seventy-seven dollars and twenty-seven cents, that the royalty coming to the residue of the syndicate other than himself and Dellicker was only about one hundred and ninety-one dollars and sixty-five cents, while there was due them for pumping seven hundred and sixty dollars, leaving a balance due them after deducting royalties five hundred and sixty-eight dollars and sixty-five cents for the other members of the syndicate. For the time since elapsed Steers has rendered no account of the royalties, but at the same rate the other members of the syndicate have probably doublted their indebtedness to Steers and Dellicker. So that it would seem from the exhibits that the two are not only getting a handsome return from the thirty-eight acre lease in Missouri on which is situated the "Laura Mine," but also piling up a handsome diviednd against the "Residue Syndicate Mine" in West Virginia. This is admitting the allegations of the bill and exhibits to be true. The plaintiffs pray that Dellicker and Steers may be required to render an account

of their mining operations on the thirty-eight acre lease, and that they may have their share of the five per cent. royalty reserved to the syndicate ascertained and paid to them by the operators, Dellicker and Steers.

The allegations of the bill as sustained by the exhibits being admitted to be true, it is plain that the defendants Dellicker and Steers occupy a two-fold relation towards the other members of the syndicate. First, they are partners with them. Second, as to the thirty-eight acre lease, they are lesees or operators under them, subject to the payment to them of five per cent. royalty on the output of the mines. On this last account, without regard to the first further than as absolutely neecssary, the plaintiffs as members of the syndicate, and for and in its behalf seek to secure from them a statement of the royalties due. They do not seek to settle up the business of the syndicate, but merely to have the accrued royalties properly accounted for and paid over. If Dellicker and Steers had been carrying on their operations in behalf of the syndicate and not in their own behalf, then the plaintiffs could only have had a full accounting of all the mining operations, including income and expenses. But it clearly appears from their method of accounting that they were operating the mines for their own benefit under the twenty per cent. royalty contract made with George W. Lear, five *per centum* of which was to go to the syndicate. As Lear is not interested in this five *per centum* he is not a necessary party to this suit, for it must be presumed that he has already received his five *per centum,* as the lease required the royalty to be accounted for and paid each week.

The sole question in this case is whether the plaintiffs have the right to sue in equity for an account of this five *per centum* royalty. In Baringer and Adams on Mines and Mining, page 118, the law is stated to be that "if the rent is dependent upon the amount of the mineral taken a bill for an account will lie." And in 2 Tucker's Com., 404, "In the case of the accounts of profits of water works, iron works and such like, equity lends a ready ear, for though the parties' interest in them may be a legal estate, no one proprietor receives the profits, but the officers of the company do so ; and where an estate is under such an arrangement, it would be absurd to send the case to law. 3 Atk. 338. So, too, a bill for an account of the proceeds of mines is

readily entertained, for in the nature of the affair, it must depend on discovery." Dellicker and Steers were interested with the mining operations, and it was their duty to keep and render a strict account of the output thereof, as the amount of royalty wholly depended thereon and was peculiarly within their knowledge, owing to the trust and confidence reposed in them by their partners in the royalty reserved.

There is another reason why the plaintiffs could only sue in equity and this is, at law a suit for this royalty must be in the names of the syndicate jointly. To do this the defendants Dellicker and Steers owing to their two-fold interest must be placed in the position of suing themselves, which is not permissible at law, although it may be done in equity. *Cann* v. *Cann*, 40 W. Va. 138; 15 Ency. Pleading & Practice, 481.

For the foregoing reasons the decree complained of is reversed, the demurrer overruled, and the cause remanded for further proceedings.

*Reversed.*