# CHARLESTON,

LOCKWOOD *et al.* v. CARTER OIL COMPANY *et al.*

Submitted March 13, 1912.   Decided November 11, 1913.

1. EQUITY—*Grounds—Title and Boundaries.*
     Equity has no jurisdiction on that ground alone to try legal title and boundary to land. (p. 178).

2.  SAME—*Grounds*—*Title and Boundaries*—*Discovery and Accounting*.

Where the main purpose of the suit is to try title and boundary to land, and discovery and accounting for profits are only incidents to and dependable on the main issues, equity will not generally take jurisdiction on grounds of discovery and accounting.   (p. 180).

3.  SPECIFIC PERFORMANCE—*Oil and Gas Lease*—*Enforcement*.

Equity has jurisdiction at the suit of lessor against lessee, on covenants broken, to enforce specific performance of the terms and provisions of a lease of land for oil and gas purposes.   (p. 180).

4.  MINES AND MINERALS—*Title of Landlord*—*Estoppel of Tenant*.

Where the common lessee of two adjoining tracts enters and takes possession of a particular part of the leased lands, as lessee of one of the tracts, and puts down an oil well, and by a sign in large letters placed on the walking beam and plainly visible to persons passing on the railroad and other public roads in the vicinity of the well, giving notice thereby of the character of his holding, and under whose lease the well was drilled and is being operated, and connects such well with a tank on the land of such lessor into which the oil produced is run, and from which the oil is delivered into the pipe line of a common carrier, and for more than ten years the well is so operated, and the royalty oils paid to the lessor under whose lease such entry was made, he is not, after the statute of limitations has fully run, estopped to deny the title of the other lessor, although such well may in fact have been located on his lands.   (p. 181).

5.  LANDLORD AND TENANT—*Title of Landlord*—*Estoppel to Deny*.

In order to work an estoppel on such lessee the lessor claiming the land must have had possession of the particular land entered and have parted with his possession to the lessee; else the relation of landlord and tenant, quoad that land, has not been established, so as to deprive the lessee entering under the adjoining lessor of rights as adverse claimant.   (p. 181).

(WILLIAMS, JUDGE, dissenting.)

(LYNCH, JUDGE, absent.)

Appeal from Circuit Court, Tyler County.

Suit by Benjamin C. Lockwood and others against the Carter Oil Company and others.  From decree for defendants, plaintiffs appeal.

*Affirmed.*

*Neal & Strickling*, for appellant.

*Kimball & Sugden, Young, McClintock & Painter* and *Thos. P. Jacobs*, for appellees.

MILLER, JUDGE:

Plaintiffs, asserting rights as lessors, seek discovery and accounting by the Carter Oil Company, lessee, of the oil produced and run into the pipe line of the Eureka Pipe Line Company, from a certain well, known as "Carter Oil Company, F. R. Wells, No. 32"; also specific execution of the lease contract made by their predecessor in title, Sarah O. Anshutz, December 1, 1891, to Charles R. Deuel, and for general relief.

The land of plaintiffs, covered by said lease, 191¾ acres, situated in Tyler County, adjoins a tract of 444¼ acres, owned by Frances R. Wells, later by her devisees, but the surface is now owned by John McCoy and others, and on which latter tract said Frances R. Wells on August 21, 1891, executed a lease for oil and gas to the same lessee, which came by assignment also to the Carter Oil Company.

The oil well in question was drilled and completed, by the Carter Oil Company, about June 17, 1895, as upon the F. R. Wells tract, and some fifty feet or more from the division line between the two tracts. This company and its predecessors had before that time drilled many wells on both tracts, and well No. 32 was intended as an offset well to No. 21, previously drilled on the Anshutz lease, and but a short distance from it. After No. 32 well was drilled, as was customary, a large sign was attached to the walking beam on the side facing the railroad, the county road, a trolley road, and a private road, reading "Carter Oil Company, F. R. Wells, No. 32", which was plainly visible to all persons passing the well, and from the time of its completion to the time of the suit, more than ten years, the oil produced therefrom was conveyed by a pipe line leading from the well into a tank at well No. 25 on the Wells tract, and from thence delivered into the pipe line of the pipe line company, and the royalty oils therefrom credited to and sold by Mrs. Wells or her devisees, and no question was ever raised by any one, as to the right to these royalty oils, until shortly before the bringing of this suit, after surveyors surveying the Wells tract reported that said well No. 32 was situated upon plaintiffs' side of the division line and not on the Wells tract.

The immediate deed to Mrs. Anshutz for the 191¾ acres,

and to which her lease to Deuel refers for a better description, calls as for a beginning corner a stone where a locust formerly stood, corner to the heirs of Eli Wells, and the last call but one is "thence up the river with its several meanderings and binding thereon 256 poles *to a stone* where a beech formerly stood on the river bank in the narrows, and corner to the heirs of Eli Wells," and from thence, the final call for the division line between the two tracts is "S. 49 E. 202 poles with the line of Eli Wells heirs to the place of beginning." Each of these leases calls for the lands of the other as a boundary or monument defining the two tracts.

Both wells referred to are located on a hill side, near the river bank, and, at the time of the drilling of well No. 32, the land in the vicinity of the wells was in woods, with no division fences built or maintained by the parties. The evidence shows that by slips on the hill side, and the building of the railroads, county road, and a road by the Carter Oil Company, the contour of the hill had been much changed, and the evidence as to the true location of the beech, the corner on the river, and of the stone where the locust, the other corner, was supposed to have stood, is very conflicting. The witnesses disagree or are uncertain, and the two sets of surveyors disagree as to where the true division line should be located. Plaintiffs' surveyors locate well No. 32 about fifty feet on their side of the line; defendants' surveyors about fifty nine or sixty feet on the Wells side of the division line.

By demurrer and answer the Carter Oil Company denies jurisdiction in equity, asserting complete relief at law, and relies on and pleads laches and the statute of limitations; and by its responses also puts in direct issue every material allegation of the bill. The absence of necessary parties is also relied on.

Anticipating every point from which the case might be viewed elaborate and able briefs of learned counsel cover all questions which could possibly arise, but the view we have taken of the case renders it wholly unnecessary to notice all these points.

First, has equity jurisdiction? According to all authority, and to many decisions of this court, which we need not cite, equity has not jurisdiction on that ground alone to try or

settle legal title or disputed boundaries to land, two of the principal questions argued in the briefs.

One basis for equity jurisdiction relied on by plaintiffs is their alleged inability to sue to oust their own tenant, if in possession under their lease, or to join such tenant as plaintiff with them in a suit in ejectment and for mesne profits against the Wells devisees and their lessee, because of their liability to be met by the plea of the statute of limitations available at law to defeat recovery of mesne profits for more than five years. Counsel for the Oil Company reply, first, that at common law the nominal plaintiff in every action of ejectment was a fictitious lessee under a lease given solely for the purpose of the action, the first defendant being treated as the casual ejector, and if the tenant in possession would be made a defendant he was put upon terms of confessing three of the four requisites for maintaining plaintiffs' action, namely, the *lease,* the *entry* and the *ouster,* which he invariably did. The lessor plaintiff was then obliged to make out a clear title, otherwise his fictitious lessee, the nominal plaintiff, could not obtain judgment for the possession for the term of the supposed lease. Citing 3 Blackstone, Comm., (Lewis's Ed.) 203, 204. Second, that defendant oil company having entered and drilled the well under the Wells lease, and given notice of its adverse claim by the sign, the laying of pipe lines, and for more than ten years having taken the oil, delivering the royalty oil to the Wellses, and having refused on demand to deliver such royalty to plaintiffs, and thereby disclaimed their title, and put them at defiance, and having disavowed their right to demand the oil, put itself in position antagonistic to plaintiffs as landlord, and if their tenant, rendered itself liable to be sued in ejectment, and to be treated as a trespasser and the lease as forfeited, there was no such legal hindrances to full relief as plaintiffs claimed. Citing for the proposition *Hovenden* v. *Annesley,* 2 Sch. & Lef: Rep., 607; *Walden* v. *Bodley,* 14 Pet. 156; *Wells* v. *Sheerer,* 78 Ala. 142; *Voss* v. *King,* 33 W. Va. 236, 10 S. E. 402; *Stover* v. *Davis,* 57 W. Va. 196, 49 S. E. 1023; *Swann* v. *Thayer,* 36 W. Va. 46. It is also argued for defendants that the rule that a tenant in possession is estopped to deny his landlord's title, or, on breach, to defend by claim of adverse title, good during the time the

statute had to run, has no application, when the bar of the statute has become complete, citing *Stover* v. *Davis, supra.*

But if jurisdiction in equity may be maintained on any of the other grounds asserted and relied on, namely, discovery, accounting, or specific performance, it will be unnecessary to consider all these divergent positions of the parties.

It is settled law that if the main purpose of the suit is to settle title or boundary to land and no other grounds of equity exist, accounting and discovery of profits are merely incidents to the right of title, and equity has no jurisdiction of the controversy. We need not waste time or cite authorities for this proposition. In this case the bill is not even framed as a bill for discovery. No officer or agent is made a party from whom discovery could be had. Hogg's Eq. Proc., section 158, p. 233; *Smith* v. *Linden Oil Co.*, 69 W. Va. 57, 71 S. E. 167. Nor was there any effort on the trial in the case to get a discovery or accounting. Only the question of title was litigated. So these grounds fail.

But to dispose of the case on its merits we must find jurisdiction in equity on some ground. Can the bill be maintained as one for specific execution? The court below decided that it could, and upon this ground, and the further, and, as the learned judge below conceived it, the broader ground, that by the discovery of oil the Carter Oil Company acquired a vested interest in each tract, and injunction to stay waste until title could be litigated at law would not lie against it. Citing Warvelle on Eject., section 92; section 5, chapter 90, Code 1906. And furthermore, that at law plaintiffs would be limited to mesne profits for five years.

On plaintiffs' theory that the Carter Oil Company was and is their tenant, our decisions would seem to give jurisdiction in equity for specific execution. One of the covenants in the lease is to deliver the oil to the credit of the lessors. This covenant is broken by the failure or refusal of the lessee to so dispose of the royalty oils. The cases cited by the court below for jurisdiction in equity to specifically execute the contract, are *Swearingen* v. *Steers,* 49 W. Va. 312, and *Smith* v. *Root,* 66 W. Va. 633. In *Peterson* v. *Hall,* 57 W. Va. 539, Judge BRANNON gives it as his opinion that such suit may be maintained as one for partition.

Predicating jurisdiction in equity on specific execution, which being good ground, it alone is sufficient. What then are the rights of the parties on pleadings and proofs? Without actually deciding the question of fact the court below was disposed to believe the weight of the evidence in favor of the division line as claimed by plaintiffs. As the Wells devisees, in whom is the legal title, are not before the court, the question of the conflicting titles to the land on which the well is located could not be adjudicated, so as to bind them or protect the Carter Oil Company, unless given notice or brought in as defendant. Warvelle on Ejectment, section 501.

But if the statute of limitations is a good defense to the plaintiffs' right of recovery, and that defense is supported by proof, the question of the true location of the original boundary line becomes immaterial. In denying plaintiffs relief, and dismissing their bill, the circuit court was apparently of the opinion to sustain this ground of defense. The decree founded on this defense is assailed by appellants, principally upon two grounds: First, that it is not permitted to a lessee who has entered under a lease to hold adversely or to deny his landlord's title, and second, that the statute of limitations will not begin to run in favor of such lessee, so as to initiate an adverse possession, except from the time of actual notice, by lessee to lessor, of his intention to hold adversely, or from the time of such open notorious acts inconsistent with lessor's rights and with the tenancy, as to put the lessor on notice.

Assuming that the Carter Oil Company or its predecessors entered the land on which the well in question is located under the Anshutz lease, as tenant of plaintiffs, their position may be entirely correct. But as suggested these propositions assume that the relationship of landlord and tenant had been established. If the Carter Oil Company, the common lessee, was not in fact put in possession of the particular land, and did not in fact enter to drill well No. 32, as lessee of the plaintiffs, but as lessee of the Wells tract, and became tenant under that lease, the propositions relied upon can have no application. That the defendant company did enter and drill this well under the Wells lease, and that it attorned to and paid the lessors of that lease the royalty oil, is abundantly

supported by the facts and circumstances and by the acts and conduct of the parties from the time of the drilling of the well until the bringing of the suit. Assuming that the true division line between these tracts was where the plaintiffs claimed it, and that defendant company's original entry was under their lease, the court below apparently concluded that the subsequent acts of the oil company in entering upon the particular portion of the land covered by the well and drilling it, and placing upon the walking beam the sign ''Carter Oil Company, F. R. Wells, No. 32'', and the laying of a pipe line from that well to the tank at another well on the Wells land, and for more than ten years attorning for the royalty oil to the lessors of that tract, constituted such actual notice of an adverse holding for the requisite period, as to give good title by adverse possession to the devisees of Mrs. Wells for the land covered by the well and the royalty oil, and to the oil company for the working interest in the oil and gas under the lease. Appellants assail this conclusion. Their counsel argue that as appellants lived, one of them in Iowa, the other in California, far away from the operations on the land, and had no other notice as to what was done on the land by their lessee, in the drilling and operation of the well, and the distribution of the oil, these acts were not sufficient to initiate adverse holding or consummate good title in them and their other lessors, and a very extensive argument is submitted in support of this theory of the case.

But according to the view we take of the case we do not think we need to deal with this theory of plaintiffs' counsel. As we view the evidence the relationship of landlord and tenant between plaintiffs and the Carter Oil Company, as to the particular well in question and the land on which it is located, was never established. If so, there is no estoppel on the oil company to deny plaintiffs' title, or to hold adversely. To support the claim of plaintiffs that the Carter Oil Company was their tenant it was necessary for them to do more than show a lease contract. It was necessary for them to show actual possession by themselves of the particular land involved, and that the oil company was let into possession by them and not by the lessors of the Wells tract. This proposition we think supported by abundant authority. 2 Tiffany

on Landlord and Tenant, section 304; Jones on Landlord and Tenant, section 694; 2 McAdam on Landlord and Tenant, p. 1446; 2 Taylor on Landlord and Tenant, section 708, and notes; *Ireton* v. *Ireton,* 59 Kans. 92, 95; *Kieth* v. *Paulk,* 55 Ia. 260.   In *Ireton* v. *Ireton,* the Kansas court, by Judge Allen, pertinently says: ''While the general rule is that a tenant is estopped from denying the title of his landlord, it was an open question in this case whether the relation of lessor and lessee, ever, in fact, existed.   It is not claimed on behalf of the plaintiff that he ever put his father into possession of the land under this lease.   His father had held possession from the date of the deed in 1874 to the time of the execution of the lease in 1880, and he continued thereafter to occupy it as before.   The mere fact of the execution of the lease by the plaintiff would not create an estoppel.''

The plaintiffs do not pretend to have ever had the *pedis possessio* of the land on which well No. 32 is located.   They could not shut their eyes though absent from the state to what was going on on their land by adverse claimants.   That well, as already noted, was intended as an offset to well No. 21 on their land.   There is evidence tending to show that an agent of theirs, and who was the attorney in fact who executed the lease on behalf of Mrs. Anshutz, was present at well No. 32 when it was completed, when the sign was placed upon it, and the pipe line laid from it to the other well on the Wells tract, and that through him the plaintiffs had notice of the adverse holding of the defendants.   His agency is denied by a deposition introduced in the cause by plaintiffs after the cause had been submitted for final decree, but in our view of the case the question of agency is immaterial.   Having entered under the Wells lease, and drilled a well, and attorned to them for the oil for more than ten years before this suit, the Carter Oil Company clearly would be estopped to deny the Wells title. Their title to the land covered by the well, if not otherwise good, has become complete by adverse possession of the Carter Oil Company, as their tenant.   *Lloyd* v. *Mills,* 68 W. Va. 241, point 3 of the syllabus.   It is not pretended that the plaintiffs ever pointed out the line now claimed by them to the Carter Oil Company or anyone holding under their lease.   Evidently they did not know where their line was, and not having been

put in actual possession of the land on which the well is located, and not having entered under the plaintiffs' lease, but under the Wells lease, the Carter Oil Company was not bound at its peril, and during the ten years and more of negligence on the part of plaintiffs, to protect their interests.

For the foregoing reasons we are of opinion to affirm the decree below, and the decree here will be accordingly.

*Affirmed.*

WILLIAMS, JUDGE, *(dissenting)*:

I do not think the rules of law which the opinion applies to this case are pertinent to the facts. The oil company admits that it went upon both tracts of land about the same time in 1895, under the two several leases made to C. R. Deuel, its remote assignor, by the adjoining land owners. It had drilled twenty-one wells on the Anshutz tract, now owned by these plaintiffs, and thirty-one wells on the Wells tract, before well No. 32, which it now contends is on the latter tract, was drilled. If that well is located on the Lockwood side of the division line between the land-owners, which the opinion assumes to be the fact and which I do not controvert, it was already in possession of that part of the Lockwood land on which it is located, under the Anshutz lease. Because, when the oil company took possession of the Lockwood land under that lease, it took possession of every foot of it up to its true boundaries, that was not in the actual, adverse occupancy of someone else. The Wellses were not in possession, either actual or constructive, of the land around well No. 32, and therefore possession followed the title, and when the oil company went in to possession of any part of the Lockwood tract, having the right to drill anywhere on it, and no adverse claimant being in the occupancy of any part of the tract, its possession extended to the whole. The fact is that the land on both sides of the line close to well No. 32, was rough, river-hill lands and in woods. No fence had ever been built on that part of the line. Both leases call for the same boundary line. The Anshutz lease calls for the Wells land as one of its boundary lines, and the Wells lease calls for the Anshutz land as its boundary line. Therefore, it is not consistent with the facts to say that the Wellses put the oil company in possession of the land where well No. 32 is drilled. There is but one dividing line between

them; and, in my opinion, its proper location determines the rights of the parties. The fact that the line was not marked on the ground can not affect the rights of the parties. Its location could easily have been ascertained. The maxim, *id certum est quod certum reddi potest,* applies. Having gone into possession under the Anshutz lease, the oil company can not defeat the rights of its lessor to any part of the leased premises by sinking a well on it, as if it was the Wells land, and voluntarily delivering royalty oil derived therefrom to them. The lessee, having been put in possession by his lessor, is estopped to deny his lessor's title. Moreover, it is the lessee's duty to protect his lessor's boundaries. 1 McAdam on Landlord and Tenant, sec. 82; 1 Taylor on Landlord and Tenant, (9th ed.), sec. 179. The Wellses could not have put the oil company in possession of any part of the Lockwood land without first ousting it as Lockwood's tenant. This was not done. But the opinion treats the oil company as having attorned to the Wellses. Granting, for argument sake, that paying royalty to Wellses that ought to have gone to Lockwoods, might amount to an attornment, it still is ineffectual in this case, because no notice thereof was given to the Lockwoods. They lived in distant states, and had no representative on the land, either at the time well No. 32 was drilled, or since. The placing of the words "Wells No. 32" on the walking beam was no notice to them. Having given no notice to the Lockwoods of its attornment to a new landlord, the character of the oil company's possession never changed. *Voss* v. *King,* 33 W. Va. 236. In legal contemplation, and in fact as well, it was all the time in possession of every inch of the Anshutz tract as Lockwood's lessee. "A tenant in possession cannot disclaim his landlord's title without surrendering possession to him. He can not collude with and attorn to another claiming a hostile title to the prejudice of his landlord." *Stover* v. *Davis,* 57 W. Va. 196.

"A tenant in possession under one title can make no valid attornment to one not in privity with that title." 1 Taylor on Landlord and Tenant, sec. 180. Having taken possession of plaintiff's land for purposes of drilling for oil, the oil company is estopped to deny their title during the continuance of the lease. *Voss* v. *King, supra;* Tiffany on Landlord and

Tenant, page 178. The tenant can not defend on the ground that title is outstanding in another. *Hawes* v. *Shaw,* 100 Mass. 187.

The oil company was the lessee of both tracts of land, and the Wellses, the lessor of one of them, in the absence of the lessor of the other tract, or of any one representing them, undertook to locate the dividing line between the tracts, and made a mistake and located well No. 32 on Lockwood's land; Let it be regarded as an innocent mistake of fact, then on what principle of law are the Lockwoods to be held responsible for it? They did not participate in the mistake; in fact they knew nothing of the location of the well until shortly before bringing this suit. They are not estopped to assert title to the land, or the oil produced from it; knowledge is essential to work an estoppel. Because of the privity of relation between them and their lessee the Lockwoods had a right to rely upon the oil company's accounting to them faithfully for their royalty oil; nor were they negligent in not knowing that it was not doing so; and they were diligent to assert their rights as soon as the facts became known. The oil company, having accepted a demise and possession under it from Mrs. Anshutz, is estopped to deny her title. But having attorned, if it can properly be called attornment, to the Wellses, under a mistake as to the dividing line between the lands, a mistake of fact, it is not estopped to deny the title of the attornee. *DeWolf* v. *Martin* 12 R. I. 533; *Cain* v. *Gimmon,* 36 Ala. 168; *Hammons* v. *McClure,* 85 Tenn. 65; *Berridge* v. *Glassey,* 7 Atl. 749 (Pa.); *Givens* v. *Mullinax,* 4 Rich. (S. C.) 590, 55 Am. Dec. 706.

"A person having entered into possession of land under one, and who was induced to attorn to another under the belief and upon the claim of the latter that he has title, when sued for the rent by the heirs of such second landlord, may show in defense that his attornment had been procured by a false claim of title, and that the rent had been demanded and paid to the landlord from whom he derived his possession, as the rightful owner." *Anderson* v. *Smith,* 63 Ill. 126.

"While a tenant can not affect his landlord's interest by accepting a lease from another, he may by accepting two leases of the same premises for the same time, estop himself from denying the title of either; yet an exception to this rule is

recognized where the tenant already in possession under the first, accepts the second under the belief, through mistake, artifice or fraud, that the second lessor is privy in title with the first.'' *Petterson* v. *Sweet*, 13 Ill. App. 255. *Michigan Cent. R. R. Co.* v. *Bullard*, 120 Mich. 416; *Shearer* v. *Winston*, 33 Miss. 149; *Swift* v. *Dean*, 11 Vt. 323, 34 Am. Dec. 693; *Ireton* v. *Ireton*, 59 Kan. 92; *Bowdish* v. *City of Dubuque*, 38 Io. 341.

Again, assuming that the oil company has made a mistake in locating well No. 32, it is clear that plaintiffs were not parties to the mistake and in no way induced it. Who then should suffer, if any one, because of the mistake? Certainly the one who caused it, according to an universally recognized equitable rule, that where one of two innocent parties must suffer, the burden must rest on him who caused the mistake. But there is no occasion for either party in this case to suffer. Because, if well No. 32 is on the Lockwood lease, unquestionably they are entitled to have the oil company account to them for the royalty oil; and if it has delivered it to the Wellses, under a mistake of fact, it has a right to recover back the price of it.

The location of the dividing line being an incidental fact, necessary to be determined, and one in which the Wellses were vitally interested, the oil company impleaded them by cross-bill, making all parties interested in the determination of that question parties; answers were filed to the cross-bill and the chancellor, on final hearing, dismissed both the cross-bill and the original bill. I think he erred in both particulars. The oil company, being the lessee of the two adjoining tracts, had the right to have the location of the dividing line determined in a manner that would be binding on both its lessors, for its future protection. I think the case has been decided on a wrong principle, and that plaintiffs should have been given the relief prayed for.