Margaret A. Shearer

*v.*

Allegheny Land and Mineral Company

(No. 12686)

Submitted September 24, 1968.    Decided December 20, 1968.

Dissenting Opinion January 23, 1969.

Rehearing Denied February 7, 1969.

B. J. Pettigrew, Jr., J. Edward Litz, for appellant.

Daniel L. Louchery, Linn Mapel Brannon, for appellee.

CALHOUN, JUDGE:

This case, on appeal from a final judgment of the Circuit Court of Lewis County, involves a civil action in which Margaret A. Shearer, the appellant, seeks to recover from Allegheny Land and Mineral Company, the appellee, which hereafter may be referred to in this opinion merely as Allegheny, the one-eighth gas royalties which she alleges are due under an oil and gas lease entered into by the parties on March 6, 1959.

Margaret A. Shearer, hereafter sometimes referred to in this opinion as Mrs. Shearer, has been the owner and the occupant since 1918 of approximately 75 acres of land situate in Freemans Creek District, on the waters of Leading Creek in Lewis County, West Virginia. On March 6, 1959, she and her husband entered into an agreement with Allegheny Land and Mineral Company by which they granted to Allegheny the "exclusive right to drill, operate for and produce oil and gas" on the tract of 75 acres, more or less, owned by Mrs. Shearer. It is the alleged breach of that agreement by Allegheny which is the basis of this action.

The land owned and leased by Mrs. Shearer to Allegheny was at one time a part of a tract of 246 acres, more or less, owned by Charles L. Bush and his wife. On November 26, 1903, Bush and his wife executed a lease of the entire tract to Hope Natural Gas Company, which may hereafter be referred to in this opinion as Hope, for the purpose of oil and

gas development. The lease was for a term of ten years and for "as long thereafter as oil or gas, or either of them, is produced from said land". By the terms of the lease agreement, Hope agreed to furnish to the lessors a specified maximum volume of free gas and, in addition, to pay them $75.00 "each three months in advance for the gas from each and every gas well drilled on said premises, the product from which is marketed and used off the premises, while the gas from said well is so marketed and used." This oil and gas lease was duly recorded and the trial court found that the lease to Hope "has been in full force and effect since the date of its execution on November 26, 1903, up to the present time." The fact that the Hope lease is valid and subsisting has not been challenged and is, therefore, not in issue in this case.

After the execution of the lease to Hope, Mrs. Shearer, through a series of mesne conveyances, obtained title by a deed of conveyance to 75 acres of the surface of this original 246-acre tract and title to the oil and gas under approximately 34 acres thereof. On March 6, 1959, Mrs. Shearer leased these 75 acres, more or less, to Allegheny for the purpose of oil and gas production. Under the lease agreement, the lessor was entitled to one-eighth royalty on all of the gas produced and marketed from the leased premises.

By terms of the lease from Mrs. Shearer to Allegheny, it was agreed that it should remain in force for five years "and as long thereafter as the said land is operated by the Lessee in the search for or production of oil or gas with the extension of term payment of rentals as hereinafter set forth." The lease also granted to Allegheny incidental rights to store gas on the premises or by introducing the same into any sand or sands under the land, together with rights-of-way for pipe lines, structures, plants, houses, buildings for employees, tanks, stations, houses for gates, meters and regulators "for the production and transportation of oil and gas, and for the storage of any gas therein; * * *." The lease contains the following provisions:

> "Lessor hereby warrants generally the title to all oil and gas in and under the land hereinbefore

described and covenants that *he* will forever warrant and defend the leasehold estate hereby demised unto Lessee against the lawful claims and demands of all persons whomsoever, and that the Lessee shall have the exclusive, full, free and quiet possession of the said described premises for the purposes and during the term herein set forth.

\* \* \*

"In the event of notice of any adverse claim to the leased premises, or to any part of the rentals or royalties, the Lessee may withhold payment of the same until the ownership is determined by compromise or by final decree by a Court of competent jurisdiction."

Prior to entering upon the premises, Allegheny caused the title of the leased premises to be examined and the examining attorney raised the question whether the premises leased by Mrs. Shearer were included in the 246-acre lease to Hope executed by Charles L. Bush and his wife. Upon the assurance of the "Lewis County Engineer" that the leased premises were not included in the Hope lease, the lessee entered upon the property and commenced drilling a well.

On September 7, 1959, when Allegheny had drilled to a depth of 750 feet, Hope notified Allegheny that it was trespassing and demanded that the drilling be stopped. Allegheny ceased its drilling operations at once. On September 8, 1959, Hope verbally agreed to assign to Allegheny its leasehold right as to the tract of 34.48 acres upon which the well was being drilled. The written assignment from Hope was executed and delivered to Allegheny on September 16, 1959, but was dated August 1, 1959, to evidence Hope's authorization of Allegheny's having gone upon the land on August 12, 1959.

On September 19, 1959, gas was discovered by Allegheny in paying quantities and drilling ceased. This was eleven days after Hope verbally agreed to make the assignment, and three days after the execution of the written assignment. On or about September 20, 1959, Mrs. Shearer was notified by officials of Allegheny of the negotiations with Hope and

that she would receive only the $300.00 rental per well as provided for in the Hope lease. This, we believe, was tantamount to notice to Mrs. Shearer by Allegheny that thereafter it was occupying the premises and continuing its drilling pursuant to the assignment to it of Hope's paramount rights under its 1903 lease. On September 24, 1959, the well was fractured and gas was turned into the line on October 16, 1959.

On February 20, 1965, Margaret A. Shearer instituted an action in the Circuit Court of Lewis County against Allegheny. On May 7, 1965, the plaintiff filed her motion for summary judgment. The motion for summary judgment was submitted to the trial court for decision on the pleadings, exhibits, affidavits, stipulations and upon briefs and oral argument of counsel. In entering summary judgment for the defendant, the trial court held that the plaintiff and defendant were not landlord and tenant when the assignment was made, particularly when gas was discovered in paying volume, and that, regardless of the capacity in which Allegheny occupied the leased property, it was constructively evicted therefrom by title paramount in Hope and, being so evicted, Allegheny then had the right to take such assignment and to attorn to Hope and also to minimize damages.

In its written opinion, the trial court found that in 1918, "Margaret A. Shearer questioned the existence of a valid lease on her land and was advised by the Hope Natural Gas Company that it had a valid lease on the land owned by her dated November 26, 1903." A letter written to her in 1918 by an official of Hope has been made an exhibit and a part of the record. The body of the letter is as follows:

"Dear Madam:

"Referring to your letters of Aug. 27 and Sept. 6th, offering to lease to this company tract of land conveyed by C. L. and Allie V. Bush to Ralph Moneypenny and wife, and by Moneypenny to you; would state that the tract in question was conveyed to Ralph Moneypenny by C. L. Bush on April 23, 1908, and we have a lease covering this tract and

others, dated Nov. 26, 1903 (and not Sept. 1908, as stated in your letter). Therefore, we have a good and valid lease on the tract owned by you."

The record does not disclose that Mrs. Shearer questioned or disputed the assertion made to her in the letter quoted above or that she undertook at any time in the trial court to prove that her land was not, in fact, covered by the Hope lease. We believe that we are warranted in asserting from the briefs and oral argument of counsel, that she, at least tacitly, admits that the Hope lease covers the land owned by her. Her claim seems to be in the nature of confession and avoidance in relation to the Hope lease and the assignment from Hope to Allegheny.

The essence of the decision of the trial court was to require Allegheny to pay Mrs. Shearer at the rate of $300.00 per well as was required by the Hope lease rather than at the rate of a one-eighth royalty as provided in the lease from Mrs. Shearer to Allegheny. The flat well rentals provided for in the Hope lease have been paid regularly by Allegheny, and "it was agreed by exchange of letters between counsel representing plaintiff and defendant, * * * that she cash same without prejudice to her position in this civil action."

On appeal to this Court, the case was submitted for decision upon the record made in the trial court and upon briefs in writing and oral argument of counsel. It is not contended that the case involves any genuine issue of any material fact.

The primary issue before this Court for decision is whether the lease between Mrs. Shearer and Allegheny created a legal relationship between the parties of such a nature that would preclude Allegheny from paying only those royalties provided for in the Hope lease. Counsel for Mrs. Shearer maintains that the nature of the lease with Allegheny was such that an estate vested in the lessee at the time it entered into possession; that a landlord and tenant relationship was created at that time; and that, there-

fore, Allegheny was estopped to deny the title of Mrs. Shearer and attorn to the Hope lease.

We are unable to agree with these contentions. This Court has consistently held that a lessee under an oil and gas lease has a mere right of exploration, and, therefore, no estate vests in the lessee until the discovery of oil or gas in paying quantities. *Carper* v. *United Fuel Gas Company,* 78 W. Va. 433, 440, 89 S. E. 12, 15; *Lowther Oil Company* v. *Miller-Sibley Oil Company,* 53 W. Va. 501, pt. 1 syl., 44 S. E. 433. In *South Penn Oil Company* v. *Snodgrass,* 71 W. Va. 438, 450, 76 S. E. 961, 966, this Court stated: "Discovery of oil within the term vests an estate, and terminates the mere right of exploration. It creates the relation of landlord and tenant until the end of the fixed term beyond question."

Counsel for Mrs. Shearer maintain, however, that the lease between Mrs. Shearer and Allegheny "actually vests Allegheny, as lessee, with numerous *possessory rights, uses and estates in the Shearer land* which contractually create a landlord-tenant relationship between said parties from the very day Allegheny entered *upon the land* and commenced oil and gas exploratory operations."

We find no merit in this contention. It is true that the lease between Mrs. Shearer and Allegheny does grant the right to construct pipe lines, power lines, buildings, and all other rights and privileges incident to the economical operation of the land and the right to store gas. The grant of such incidental rights by the Shearer lease is meaningless and worthless unless Allegheny was also granted a legal and valid right to explore and to drill for oil or gas. It was not within Mrs. Shearer's power to grant such a primary right because of the paramount right of Hope under its valid and subsisting lease. We believe, however, that a grant of the right to explore and operate for oil and gas carries with it an implied right to use as much of the surface as is reasonably necessary to an exercise of such right. We find nothing in this lease that would support a holding that any estate vested in Allegheny at the time it entered

into possession of the land. Allegheny received the mere contractual right to search for and produce oil and gas upon the land, and no estate vested in it by the mere execution of the lease from Mrs. Shearer.

Counsel for Mrs. Shearer also contend that the trial court erred in holding that the actions of Allegheny in taking an assignment from Hope did not constitute an attornment to Hope in violation of Code, 1931, 37-6-4, which provides: "The attornment of a tenant to any stranger shall be void, unless it be with the consent of the landlord of such tenant, or pursuant to, or in consequence of, the judgment, order, or decree of a Court." This Court held in *Stover* v. *Davis*, 57 W. Va. 196, 49 S. E. 1023 that a tenant in possession cannot dispute his landlord's title without surrendering possession to him. The lease provides that "The leased premises may be fully and freely used by Lessor for farming purposes, except parts as are used by *Lessor* in operating hereunder." Allegheny, therefore, was not granted an exclusive possessory right in the surface of any specific, defined portion of the land. The attornment rule, however, presupposes the existence of a landlord-tenant relationship. In *Rosin Coal Land Company* v. *Martin,* 81 W. Va. 33, pt. 4 syl., 94 S. E. 358, the Court stated: *"When the relationship of landlord and tenant has been once established* the tenant with few exceptions is thereafter estopped to deny his landlord's title in any action brought against him by the landlord to vindicate his rights under the tenancy." (Italics supplied.)

There is no basis for our holding in this case that a landlord and tenant relationship was ever effected between Mrs. Shearer and Allegheny. The language of the Shearer lease was not sufficient to create a vested estate in Allegheny at the time Allegheny entered into possession. At that time the lease had created merely a contractual right to enter upon the premises, in order to explore and to drill for oil and gas and, if oil or gas were found in paying quantity, to extract it. At that time, the parties did not know whether the land in question had either oil or gas beneath

its surface. It is inconceivable that there could be created by lease a vested estate in something which is not known to exist. It has been said that an oil and gas lease is sui generis. It differs from a lease of something which is visible and known to be in existence such, for instance, as a house. Neither oil nor gas was discovered in paying quantity by Allegheny until after it received the assignment from Hope under its 1903 lease. Therefore, the relationship of landlord and tenant never came into existence by virtue of the Shearer lease.

Even if a landlord and tenant relationship had been created by the Shearer lease, the facts of this case do not create a situation for application of the attornment rule. Allegheny has never disputed Mrs. Shearer's title to the land in question or to any oil or gas which may lie beneath the surface thereof. It has never recognized any lessor or "landlord" other than her. On the contrary, Allegheny from the outset has recognized Mrs. Shearer's ownership of the tract of land in question, including any oil or gas which may have been a part of that land. Allegheny has never asserted that Hope has either title to the land or ownership of the oil and gas. Title has not been an issue at any time or place in the case. Allegheny has consistently recognized that payment for any gas which it has produced or which it may hereafter produce on the land must be made to Mrs. Shearer. She is the only one to whom Allegheny has undertaken to make payment for gas produced. The case does not involve title to land or ownership of gas. The question in issue between Mrs. Shearer and Allegheny in this case is merely which lease Allegheny is bound to recognize as binding; or in other words, which lease validly and legally fixes the basis upon which Allegheny shall make payments to Mrs. Shearer for gas extracted from her land and the basis of a right in Mrs. Shearer to demand payment to her on a specified basis or in a specified amount.

Allegheny does not assert a hostile or adverse title in Hope. The lease to Hope recognizes title of the landowner. A rule that a tenant or lessee in possession is estopped to

assert a superior, adverse or hostile title in another cannot, therefore, have any application to the facts of this case. Allegheny has not asserted that it is holding possession adversely to Mrs. Shearer. Rather it contends, with ample justification, that it is in possession pursuant to provisions of the Hope lease and that, when Mrs. Shearer initially acquired title to the land, she acquired that title subject to the valid and duly recorded Hope lease. The lease to Hope grants to it incidental rights to lay pipe lines, to build tanks, stations and structures "to take care of" any oil or gas produced on the land which was the subject of the lease. These incidental rights are not materially different from similar incidental rights enumerated in the Shearer lease. As we have stated previously, such incidental rights arise by implication in a mineral lease, even when not expressly enumerated in the lease. We are of the opinion that the mere execution of such a lease does not create a landlord and tenant relationship or any basis for an estoppel. *Lockwood v. Carter Oil Company*, 73 W. Va. 175, 183, 80 S. E. 814, 817.

Counsel for Mrs. Shearer allege that the trial court erred in holding that the doctrine of estoppel was inapplicable to this case. The trial court ruled that a landlord-tenant relationship must be in existence before a lessee is estopped to deny his landlord's title.

We agree with the finding of the trial court. "The estoppel rule does not apply where the party in possession denies the relationship of landlord and tenant ever existed. * * * The relationship of landlord and tenant must exist before an estoppel can be claimed." 3 Thompson, Real Property, Section 1040, pages 310-311. In *Lockwood* v. *Carter Oil Company*, 73 W. Va. 175, 182, 80 S. E. 814, 817, the Court said: "As we view the evidence the relationship of landlord and tenant between plaintiffs and the Carter Oil Company, as to the particular well in question and the land on which it is located, was never established. If so, there is no estoppel on the oil company to deny plaintiffs' title, or to hold adversely."

In its written opinion, the trial court made a finding, which we believe is correct, and which is as follows:

"* * * from the pleadings, affidavits, exhibits, evidence, stipulations in this case, and briefs of counsel that the 34.48 acres of oil and gas owned by the plaintiff and leased by her to the defendant by said lease of March 6, 1959, was then bound by a prior effective lease made by Charles L. Bush to the Hope Natural Gas Company dated November 26, 1903; that because of said prior lease the plaintiff had insufficient title and right to make said lease of March 6, 1959. Said lease of March 6, 1959, was therefore invalid and ineffective. The invalidity of said lease is a defense in this action, and the plaintiff is therefore found to have no right to recover."

For reasons stated in this opinion, the judgment of the Circuit Court of Lewis County is hereby affirmed.

*Affirmed.*

HAYMOND, JUDGE, dissenting:

I respectfully but emphatically dissent from the decision of the majority which affirms the judgment of the circuit court and holds the lease between the plaintiff and the defendant to be invalid and that the plaintiff is not entitled to the royalty which she seeks to recover and which is expressly provided by the lease. The holding of the majority is, I think, clearly erroneous and manifestly inequitable and is also contrary to the numerous findings by the circuit court which are approved by the majority and were based on undisputed facts.

The material facts are not disputed. The defendant entered into possession of the 75 acre tract on August 12, 1959 under a lease between it and the plaintiff dated March 6, 1959 and it has never surrendered that possession to the plaintiff or surrendered the lease but has continued to hold such possession until the institution of this suit and presumably continues to do so until this day.

On August 25, 1959, 13 days after it took possession, the defendant began to drill the well in question on the 34.48

acre portion of the 75 acre tract and by September 7, 1959 had drilled the well to a depth of 750 feet. The next day, September 8, 1959, the Hope Natural Gas Company, hereinafter sometimes referred to as Hope, notified the defendant that the well was being drilled on land covered by its prior lease on the larger tract of 246 acres, dated November 26, 1903, and that the defendant was a trespasser. On the same day the Hope Natural Gas Company verbally agreed to assign to the defendant its rights to the 34.48 acre tract under its lease of November 26, 1903 and on September 16, 1959 executed the assignment, which was given the prior date of August 1, 1959 to precede the August 12, 1959 date of the entry by the defendant under its lease with the plaintiff.

The defendant had discovered gas on September 13, 1959, 3 days before the execution of the assignment and though the defendant temporarily suspended its drilling during and until after the completion of its negotiations with Hope Natural Gas Company on August 8, 1959, it continued to drill and it discovered gas in paying quantities on September 19, 1959, fractured the well on September 24, 1959 and turned the produced gas into a line on October 16, 1959 for sale and delivery to Hope Natural Gas Company which agreed to purchase the gas produced from the well in connection with the execution of the assignment which authorized the defendant to develop oil and gas on the 34.48 acre tract.

Though the assignment was admitted to record on September 22, 1959, the plaintiff had no actual notice or knowledge of the assignment between the defendant and Hope until the latter part of September, or sometime in October, which was subsequent to the completion of the well. The plaintiff has never consented to the assignment or to any attornment by the defendant to Hope and, in fact, there has been no such attornment. Though there is privity of estate in the oil and gas between the plaintiff and Hope the plaintiff is not a party to the assignment and Hope is not a party to the lease between the plaintiff and the defendant. The defendant has at no time surrendered its lease from the plaintiff under which it entered upon the 75 acre tract of

land of the plaintiff and drilled the Shearer well to completion between August 25 and September 24, 1959, has never abandoned that lease or surrendered possession of the 75 acre tract of land or any part of it to the plaintiff but remains in possession of such land and, despite any utterances to the contrary, is exercising all its rights and privileges under the lease from the plaintiff in the production and sale of the gas from the well on the 34.48 acre portion of the 75 acre tract. Furthermore, the defendant admits and this Court in the majority opinion concedes that the plaintiff owns the 75 acre tract and the oil and gas under it and the defendant does not dispute or deny her title to the land and the oil and gas under it.

All the foregoing facts are conceded and have been recognized to exist by the circuit court, as shown by its opinion which is a part of the record, and by this Court in the majority opinion.

In view of the undisputed material and controlling facts the question whether the relationship of landlord and tenant existed between the plaintiff and the defendant before the execution of the assignment from Hope Natural Gas Company to the defendant is not controlling or, indeed, important in the decision of this case. On the contrary the controlling question, in my judgment, is whether the defendant can continue to hold possession of the 75 acre tract which includes the 34.48 acre portion, exercise and retain the rights granted to it under the lease from the plaintiff, and continue to operate the well and produce gas from it under the lease which it has not surrendered, all of which it is now doing, and at the same time successfully contend that it is not required to observe the provision of that lease which expressly obligates it to pay the 1/8 gas royalty provided by the lease. In my considered opinion it can not ignore or disregard the royalty provision of the lease in that way. The lease can not be valid in part and invalid in part with respect to the production of gas. It is either valid in its entirety or invalid in its entirety. Clearly the lease is not invalid or ineffective in its entirety, as erroneously held by the circuit court and by the majority. On the contrary

it is manifestly valid and binding between the parties to it and is merely subject to the prior lease dated November 26, 1903, *Thompson* v. *Christie*, 138 Pa. 230, 20 A. 934, 11 L.R.A. 236, 32 Am. Jur., Landlord and Tenant, Section 93, which was assigned to the defendant by Hope and the effect of which was merely to release Hope's rights to the defendant. There is no basis for any claim that the lease between the plaintiff and the defendant is invalid or of no binding force and effect between the parties to it. It is based on a valid and a sufficient consideration and was entered into in good faith and in the belief of both parties, until the contrary was later discovered by them, that the 34.48 acre tract was not subject to the prior lease, and there is no contention that the plaintiff engaged in any fraudulent conduct in its execution.

Manifestly the execution of the assignment did not cancel or terminate the lease between the plaintiff, who was not a party to it, and the defendant. As previously pointed out all it did, or could do, as the plaintiff was not a party to it, was to transfer and release to the defendant the rights of Hope Natural Gas Company to the oil and gas in and under the 34.48 acre tract and to use and develop it for oil and gas without any opposition from or controversy with the Hope Natural Gas Company. The principal effect, and in fact the only effect, of the transfer to the defendant was to remove Hope from the picture and to enable the defendant to take advantage of a breach by the plaintiff of her warranty of title in the lease and to give the defendant the option to surrender the lease between it and the plaintiff, in accordance with the surrender clause, and to occupy and possess the land and to operate the well on it under the prior lease instead of under the lease from the plaintiff. The defendant did not do and has not done either. Instead, despite any declaration by it to the contrary, the defendant has actually continued in possession of the property under the lease from the plaintiff and has kept it in force and effect by its failure or refusal to surrender it as it is expressly authorized to do by the surrender provision in the lease. The continued failure or refusal of the defendant to sur-

render the lease shows clearly that the defendant considers it to be of binding force and effect, that it confers rights and benefits upon it, that it possesses and operates the premises and produces gas from the well under and by virtue of that lease, and that it is unwilling to give up or surrender its rights under it.

The majority emphasizes, unnecessarily in my opinion, the well established principle that title to oil and gas does not pass, under an oil and gas lease, from the lessor to the lessee until they are discovered by the lessee and that until then the relationship of landlord and tenant does not exist between the lessor and the lessee. It should be kept in mind that there is no controversy in this proceeding as to any claim of title between the defendant and Hope. If there had been no assignment by Hope and it had attempted to oust the defendant or sought to recover the value of the gas produced under the lease from the plaintiff the question of the prior title of Hope would perhaps have been the vital question for decision. But, as indicated, that issue is not raised by either the defendant or Hope, which is not a party to this proceeding.

If the defendant, when notified by the Hope Natural Gas Company of its prior lease, had abandoned the premises which it held under the lease from the plaintiff, because of breach of warranty of title by the plaintiff, or had surrendered its lease from the plaintiff which it was permitted to do by the surrender provision of its lease from the plaintiff which it did not do and has not done, and if the defendant had taken possession and used and occupied the premises under the assignment of the prior lease from the Hope Natural Gas Company to the exclusion of the lease from the plaintiff which the defendant has not done at any time, the foregoing principle that denies title to the oil and gas until their discovery would have prevented the relationship of landlord and tenant between the plaintiff and the defendant.

When, however, the defendant failed and refused to surrender the lease from the plaintiff and continues so to do and instead continued, and still continues, to hold the prem-

ises covered by that lease and to exercise the rights granted it by that lease, which are broader and more extensive than the rights granted by the prior lease to Hope, and continues to produce, take, sell and deliver the gas from the well on the 34.48 acre tract and recognizes the title of the plaintiff to the land in question and her ownership of any oil and gas which may underlie the surface of the leased premises and does not assert an adverse or hostile title or ownership to the premises and the oil and gas but merely claims the right to pay the plaintiff for the oil and gas produced at the rate specified in the prior lease, it is manifest to me that the relationship of landlord and tenant existed, at least, from the time gas was produced from the well in paying quantities on September 19, 1959 and has continued to exist and still exists and in consequence the defendant is estopped to deny the title and ownership of the gas, and the defendant is precluded from making any valid attornment to the Hope Natural Gas Company with respect to the leased premises and the oil and gas produced from such premises.

It is impossible for me to understand how the majority of this Court can correctly hold that the lease between the plaintiff and the defendant is invalid and that the defendant is required to pay, not the royalty specified in the lease, but at the rate specified in the prior lease, when the majority at the same time states in point 2 of the syllabus that the defendant recognizes the title of the plaintiff to the land in question and her ownership of any oil and gas which may underlie the surface of the leased premises and does not assert an adverse title or ownership in any other person but merely asserts its right and duty to pay the plaintiff for the royalty and the gas produced at the rate specified in the prior lease. On the contrary it seems to me that the only simple, clear and equitable decision in this proceeding should be that the defendant, while recognizing the foregoing rights and title of the plaintiff and while possessing and operating her premises under the lease from her, should be required to recognize all the provisions of that lease and to comply with its provision that the defendant

pay as royalty 1/8 of the gas produced under the lease. I would so hold.

In Annotations 3b, 87 A.L.R. 2d 608, there is this pertinent language: "* * * when the lessee goes into possession, enjoys the benefits of the leasehold property, and remains undisturbed in his possession, then he may be estopped to deny the lessor's title, although actual title to the property may be in another." In *Stover* v. *Davis,* 57 W. Va. 196, 49 S. E. 1023, this Court held in point 3 of the syllabus: "A tenant in possession cannot disclaim his landlord's title without surrendering possession to him. He cannot collude with, and attorn to another claiming a hostile title to the prejudice of his landlord."

In *The Putnam Company* v. *Fisher,* 128 W. Va. 383, 36 S. E. 2d 681, this Court said: "A tenant will not be permitted to deny the title of his landlord in the absence of fraud or mistake in the procurement of a lease, and no proof of title is required by the landlord in an action against his tenant. *Voss* v. *King,* 33 W. Va. 236, 10 S. E. 402. The attornment of a tenant to a stranger is void unless the landlord consents, or such attornment is the consequence of a judgment, order or decree of a court. Code, 37-6-4. See *Allen* v. *LaFollette,* 94 W. Va. 700, 120 S. E. 176; *Rosin Coal Land Co.* v. *Martin,* 81 W. Va. 33, 94 S. E. 358; *Stover* v. *Davis,* 57 W. Va. 196, 49 S. E. 1023; *Voss* v. *King,* 38 W. Va. 607, 18 S. E. 762." In *Harman* v. *Lambert,* 76 W. Va. 370, 85 S. E. 660, this Court, quoting from the then Section 4, Chapter 93, Code of West Virginia, used this language: " 'The attornment of a tenant to any stranger shall be void, unless it be with the consent of the landlord of such tenant or pursuant to or in consequence of the judgment, order or decree of a court'. Construing this section, we said, in effect, in *Coal & Lumber Co.* v. *Lumber Co.,* 71 W. Va. 21, *Voss* v. *King,* 33 W. Va. 236, and *Stover* v. *Davis,* 57 W. Va. 196, among other cases, that the recognition of the title of another than the landlord who put him in possession, or attornment to such other, by the tenant of an adversary claimant, will not interrupt the continuity of the landlord's possession except as provided by that section, unless with

knowledge or notice the landlord acquiesces in the disloyal conduct of his tenant; or, as in *Voss* v. *King,* if a tenant takes a secret lease or conveyance from another claiming to be the true owner, without the knowledge of his landlord, the character of his possession will not be altered. 32 Cyc. 1341."

Certain it is that the defendant can not accept, as it is doing, the benefits of its lease with the plaintiff and at the same time ignore and refuse to shoulder or bear the burdens which it imposes, one of which is the obligation to furnish or pay the plaintiff the value of 1/8 of the gas produced from the leased premises.

The defendant admits that it owes the plaintiff rental or royalty for the gas which it produces, takes and sells from the well which it has located on the premises covered by her lease to the defendant. The sole and simple issue in this case is how much and under which lease it must pay her for the gas which it takes. By every precept of equity, fair dealing and the law of contracts, the defendant should be required to comply with its express agreement in the lease between it and the plaintiff to pay the plaintiff, not the $75.00 quarterly installments provided by the prior lease to which she is not a party, but the 1/8 of the gas produced by it under the lease between it and the plaintiff.

For the foregoing reasons I would reverse the judgment of the circuit court and remand the case with directions that the defendant be required to account to the plaintiff for the value of 1/8 of the gas produced less the payments made by the defendant under the prior lease and that judgment be rendered for the amount of the unpaid 1/8 of the gas produced and that the defendant be required to comply with the lease provision that the defendant furnish or pay the plaintiff the value of the 1/8 of the gas produced as long as it possesses and operates the premises under the lease between it and the plaintiff which it is now doing.

I am authorized to state that Judge Berry concurs in the views expressed in this dissenting opinion.