[Civil No. 4039.   Filed April 24, 1939.]

[89 Pac. (2d) 630.]

W. H. GIBBS, Appellant, v. ETHEL PRYOR BAS-
HAM, Individually and as Executrix of the Es-
tate of JOHN COLVIN BASHAM, Deceased,
Also Known as J. C. BASHAM, Appellee.

Messrs. Houston & Dodd and Mr. James D. Barry, for Appellant.

Messrs. Hummel, Hummel & Wyatt and Mr. H. A. Wardenburg, for Appellee.

LOCKWOOD, J.—W. H. Gibbs, hereinafter called plaintiff, has appealed from a judgment of the superior court of Pima county, in favor of Ethel Pryor Basham, individually and as executrix of the estate of John Colvin Basham, deceased, also known as J. C. Basham, hereinafter called defendant.

There are three assignments of error, which read as follows:

"1. The court erred in entering a judgment not supported by the pleadings.

"2. The court erred in admitting evidence for the purpose of showing that Basham had title to, or right to possession of the property, prior to the time Basham acknowledged Gibbs' title and right to possession and accepting an assignment of the lease to the premises from him.

"3. The court erred in entering judgment that Gibbs or McNew did not have, and never had, any title or color of title or right to possession of the premises, and in not entering judgment that Gibbs was entitled to possession of the premises."

■ There is no reporter's transcript, bill of exceptions nor agreed statement of fact, and we cannot, therefore, consider the *ex parte* statement of the facts in regard to this transaction set up by plaintiff in his opening brief, but are compelled to consider the case on the abstract of record alone. We consider first whether the judgment is supported by the pleadings. The complaint upon which the case was tried is substantially as follows:

Omitting the formal part, it recites that plaintiff and defendant's testator entered into a contract, which reads as follows:

"This agreement, made and entered into this, the 27th day of April, 1931, by and between W. H. Gibbs of Ajo, Pima County, Arizona, the party of the first part, and J. C. Basham, of the same place, the party of the second part, witnesseth:

"That the party of the first part is the owner of the hereinafter described personal property to-wit:

"The buildings, gasoline pumps and tanks, and appurtenances, located upon lots seven (7) and eight (8) in Block number one (1) upon what is known as and called Edna No. 6 Lode Mining claim, (unpatented), situate in the Ajo Mining District of Pima County, State of Arizona, also known as and referred to as the Gibson Townsite; also a certain lease and option executed in favor of the party of the first part, by J. L. McNew, owner of said lots 7 and 8 as aforesaid, . . .

"That the party of the first part desires to sell and convey all of the above described property together with an assignment of his said lease and option to purchase said lots and the party of the second part desires to purchase the same.

"Now, Therefore, in consideration of the mutual covenants and agreements hereinafter set forth the parties hereto have agreed as follows, to-wit:

"The party of the first part hereby agrees to sell and convey and by these presents does sell and convey unto the party of the second part the above de-

scribed property, and the party of the second part hereby agrees to purchase and by these presents does purchase and agree to pay the party of the first part for the same as is hereinafter mentioned and set forth.

"The total purchase price is and shall be the sum of Five Thousand Dollars ($5000.00) lawful money of the United States to be paid in the manner following, viz: The sum of two thousand dollars cash upon the execution and delivery of these presents, the receipt of which sum is hereby confessed and acknowledged; the balance of three thousand dollars ($3000.00) to be paid on or before five years after the date of this agreement, the unpaid balance to bear interest at the rate of ten per cent per annum from maturity until paid;

"It is distinctly understood and agreed between the parties hereto that the title to all of the said property herein described shall be and remain in the party of the first part until the full purchase price has been fully paid.

. . . . . . . . . . . .

"It is also understood and agreed and is a part of the consideration of this agreement that the party of the second part will exercise the option to purchase the said above described lots from J. L. McNew at least thirty days prior to the termination of the option agreement above described and in the event the party of the second part shall fail to make the final payment herein required to be made within five years, then and in that event the party of the second part hereby covenants and agrees to deed to the party of the first part at the termination of this agreement the said lots number 7 and 8 Block 1 upon which the buildings above described are located, free and clear of any and all incumbrances of any kind or nature whatsoever.

. . . . . . . . . . . .

"It is agreed that in the event the party of the second part shall fail and neglect to do and perform the covenants and agreements herein set forth or shall fail and neglect to make the said payment of three thousand dollars when the same shall be due, then and in that event it shall be lawful for the party of

the first part or his agent or attorney to re-enter said premises and remove all persons therefrom and to terminate this agreement and all money paid in under the terms hereof shall belong to the party of the first part as liquidated damages, and in such event the party of the second part shall be bound to deed to the party of the first part the said lots number 7 and 8 in Block number one hereinbefore described, free and clear of incumbrances, provided the party of the second part shall by said date have acquired title to said lot. It is also understood and agreed that when said option to purchase the said lots is exercised, that the deed of conveyance from the said J. L. McNew shall be made in the name of the party of the second part.

"It is also understood and agreed that the assignment of the said option to the party of the second part by the party of the first part shall only be exercised for the purpose of acquiring title to said lots in the name of the party of the second part and may not be transferred by the party of the second part to any third person or persons.

"In Witness Whereof, the parties hereto have hereunto set their hands this the 27th day of April, 1931."

The lease and option from McNew, referred to in the agreement, was, in part, in the following language:

"This indenture, made this *Mch* day of *28*, 1929, between J. L. McNew, party of the first part, and Gibbs Motor Co., party of the second part.

"Witnesseth: That the said parties of the first part, in consideration of the convenants of the said party of the second part, hereinafter set forth, do by these presents lease to the said party of the second part the following described property, to-wit:

"Lot 7 & 8, Block I, Claim 6, of the Edna Mining Group (unpatented) situated in the Ajo Mining District of Pima County in the State of Arizona, but hereafter to be known as the Gibson Town*sight* of the town of Cornelia, Arizona.

"It is further agreed that the party of the second part may at his option purchase the above described property for the sum of $250.00 at the expiration of

four years or when patent is granted from the above dating.''

It was further alleged that defendant and defendant's testator had been in possession of all of the property described in the agreement and have paid thereon some twenty-four hundred dollars ($2,400), but have failed and refused to make the final payment within the period set forth by the contract. The allegation then follows of a declaration of forfeiture of the contract, and a prayer that the contract be cancelled, that the monies paid thereon be forfeited as liquidated damages, and that the defendant be ordered to execute a deed in favor of plaintiff, conveying all the right, title and interest of herself and the estate of her testator to plaintiff.

The defendant answered with a plea in abatement, alleging that a contest involving the title to the real estate in question was pending in the United States Land Office, and then answered, admitting the execution of the contract set up by plaintiff and the payment thereon of two thousand eight hundred forty-nine and 27/100 dollars ($2,849.27), and that she had offered to pay the balance of said purchase price on the receipt of a good and sufficient bill of sale to the property which was the subject matter of the contract, but that plaintiff had never executed any such bill of sale. It was further alleged that the plaintiff was never the owner of the property which is the subject matter of the contract, nor did he have the right or authority to sell or convey it, but that such property was all real estate, the title to which was, and always had been, in the United States of America, and that by reason of such fact the plaintiff had no right nor authority to enter into the contract, nor any rights arising out thereof.

The trial court made the following findings:

"The court finds the fact to be, in this particular case, that the improvements forming the basis of this suit were all placed upon public domain of the United States.

"The court further finds that the plaintiff, Gibbs, at no time entered upon the said premises lawfully and has always been a trespasser thereon; that is, that he received, as far as the record shows, his lease from one J. C. McNew, thus not giving him a right or title to enter the premises.

"The court further finds that the said Basham homestead entry, locating the land upon which the improvements are located in this particular case, being Homestead Serial 08577, made on July 15th, 1930, was therefore made prior in time to the contract of purchase between Basham and the plaintiff Gibbs, and therefore under the law pertaining to said entry said Basham was entitled to possession of said premises at the time the contract of sale to said Gibbs was executed and the contract was therefore without consideration, for the reason that Basham, at the time the contract was entered into, was entitled to all the improvements upon the property from the time of the said Homestead entry, . . . ''

And judgment was accordingly rendered as follows:

"It is hereby ordered, adjudged and decreed
"That the contract between W. H. Gibbs and J. C. Basham, also known as John Colvin Basham, now deceased, dated April 27, 1931, true copies of which, including a purported lease, are attached to the First Amended Complaint in the action herein, is and are null and void and wholly ineffective for any purpose whatever, and the same be and they are hereby cancelled; and

"That the defendants recover their costs herein expended in the sum of $22.50."

It will be seen by the pleadings, findings and judgment aforesaid that the trial court determined the case upon the issue raised by the pleadings that at the time the contract was entered into and defendant's

testator came into possession of the property thereunder, the title to the property was in the United States government, and that plaintiff had no title, legal or equitable, thereto, defendant's testator being the owner of the equitable title by reason of a homestead entry made prior to the date of the contract.

The sole ground for reversal urged by plaintiff is based on his assertion that, as a matter of law, a defendant in any action affecting real property, who has gone into possession thereof by virtue of a lease or executory contract of purchase and sale, is estopped from denying the title of the plaintiff from whom he received possession so long as he retains that possession. That this is the general rule cannot be doubted. *Lynch* v. *Clark*, 20 Ariz. 261, 179 Pac. 960; *Clark* v. *Holcomb*, 31 Ariz. 378, 253 Pac. 897; 35 C. J. 1224; 66 C. J. 1030, and cases cited.

The only question is whether the rule is applicable to the situation as disclosed by the pleadings in this case. We think it is. The plaintiff sets up a contract, whereby he sold to defendant certain improvements on real estate, which are of such a nature as to become part of the realty, and a certain lease and option of the realty itself executed by one McNew in favor of plaintiff. Defendant's testator by this contract agreed to purchase the property described, and to exercise the option of purchase of the realty itself under the McNew lease. We think there can be no question the pleadings show that defendant's testator went into actual possession of the premises under a lease and executory contract of purchase which he acquired from the plaintiff. Such being the case, he is not permitted, while he retains possession of the premises, to deny that the title to the property was in the plaintiff, nor to set up a superior title either in himself or in a third party. It is

true there are a few special exceptions to this rule, but the pleadings do not show that defendant's claim falls under any of these exceptions. It was, therefore, error for the trial court to consider the claim of defendant of an outstanding title in favor of her testator, or of the United States government, in determining the case, and since the record shows affirmatively that the judgment rendered was based solely upon this theory of superior title, it cannot stand.

Defendant urges that it does not appear that the objection that a tenant or purchaser in possession may not deny the title of his landlord or vendor was raised during the trial of the case in the court below, and we are, therefore, precluded from determining this issue.

■■ It is true that we have in the past said that a case will not be reviewed on a theory different from that on which it was tried below, *Tevis* v. *Ryan,* 13 Ariz. 120, 108 Pac. 461; Id., 233 U. S. 273, 34 Sup. Ct. 481, 58 L. Ed. 957, and have reaffirmed that rule in numerous cases. But in the very recent case of *Munger* v. *Boardman* decided March 27, 1939, *ante,* p. 271, 88 Pac. (2d) 536, we have held specifically that although the issue of estoppel was not raised in any manner by the parties, nor considered by the trial judge in the lower court, yet if there is anything appearing in the record which suggests that it could have been raised, the appellate court should consider the issue as though it had been raised and determined in the lower court, and may determine the appeal on such issue alone. If this be true as to the issue of estoppel, we see no reason why it should not be true as to any other issue suggested by the pleadings or evidence, even though it has not been presented to nor considered by the trial court in reaching its decision.

We are of the opinion that the judgment is not sustained by the pleadings and must, therefore, be reversed. We think, however, that it was only the interest acquired under the McNew option that defendant's testator agreed to convey to plaintiff if he failed to make the required payments, and that any conveyance ordered by the court should be limited to such interest, leaving the rights, if any, acquired from other parties to be adjudicated in proper proceedings.

The judgment is reversed and the case remanded to the superior court of Pima county for further action in conformity with this opinion.

McALISTER, J., concurs.

ROSS, C. J., concurs in the result.