513 P.2d 1339

George D. ELLINGSON and La Vedna M. Ellingson, husband and wife, Appellants,

v.

Max A. FULLER and Mae G. Fuller, husband and wife; the Estate of F. Roy Dobson, Deceased, and Pauline Dobson, Appellees.

No. I CA–CIV 1845.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 13, 1973.

Rehearing Denied Oct. 22, 1973.

Review Denied Dec. 4, 1973.

Kanne & Bickart, by Allen B. Bickart, Phoenix, for appellants.

Conway T. Ryan, Chandler, for appellees Fuller.

Lewis & Roca, by John P. Frank and Charles Crehore, Phoenix, for appellee Dobson.

## OPINION

HAIRE, Judge.

This appeal questions whether the evidence was sufficient to support the judgment entered by the trial court granting title by adverse possession to the defendants-appellees, and whether the trial court made findings of fact adequate to support its judgment. Our review of the record reveals that the evidence is sufficient to sustain the judgment, and that the findings of fact are adequate.

Plaintiffs-appellants brought this action to eject defendants-appellees from, and quiet title to, certain described real property. Defendants answered and counterclaimed, ·alleging that they had acquired title to the property in question by adverse possession under claim of right, in accordance with the provisions of A.R.S. §§ 12–521 and 12–526. Defendants also claimed a prescriptive easement on plaintiffs' roadway. The issues were tried to the court without a jury. The trial court made findings of fact and conclusions of law and entered judgment granting defendants' claim of adverse possession to a portion of the disputed area, and denying defendants' claim for a prescriptive easement. The plaintiffs have appealed from that portion of the judgment which grants title by adverse possession to the defendants.

The elements requisite for a finding of adverse possession are set forth in A.R.S. §§ 12–521 and 12–526, subsec. A. A.R.S. § 12–526, subsec. A states:

"A. A person who has a cause of action for recovery of any lands, tenements or hereditaments from a person having peaceable and adverse possession thereof, cultivating, using and enjoying such property, shall commence an action therefor within ten years after the cause of action accrues, and not afterward."

The definitions applicable to this section are provided in A.R.S. § 12–521:

"A. In this article, unless the context otherwise requires:

"1. 'Adverse possession' means an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another.

"2. 'Peaceable possession' means possession which is continuous, and not interrupted by an adverse action to recover the estate.

"3. 'Real property' includes mines and mining claims.

"B. 'Peaceable and adverse possession' need not be continued in the same person, but when held by different persons successively there must be a privity of estate between them."

Under these statutes, it must be shown that possession was actual, open and notorious, hostile, under a claim of right, exclusive and continuous for a ten year period, before title by adverse possession can be acquired. Rorebeck v. Criste, 1 Ariz.App. 1, 398 P.2d 678 (1965); Wise v. Knapp, 3 Ariz.App. 99, 412 P.2d 96 (1966); Lewis v. Farrah, 65 Ariz. 320, 180 P.2d 578 (1947).

Although the testimony was at times conflicting, there is sufficient evidence in the record to support a conclusion that defendants and their predecessors in interest continuously, openly and visibly cultivated, used and enjoyed the land in question for the required ten year period. Similarly, the record reveals that the continuous annual farming of the disputed property by defendants and their predecessors in interest has satisfied the requirements that possession be hostile and under a claim of right.

Three witnesses gave testimony which substantiates defendants' claim of adverse possession. One testified that the contested area had been farmed on an annual basis by defendants and their predecessors in interest from 1949 until shortly before trial in 1969. Another witness testified that this same land had been cultivated by defendants and their predecessors in interest at least as far back as 1951 and to his knowledge at least up to 1961 when plaintiffs pur-

chased their adjoining section. A third stated that such farming had gone on prior to 1954, although he did not indicate how long it had continued or if it had ever stopped. Since neither plaintiffs nor their predecessors in interest questioned defendants' or their predecessors' use of the disputed property until the summer of 1967, there was sufficient competent evidence from which the trial court could determine that adverse possession had occurred.

■ While plaintiffs attack the sufficiency of the evidence in general, they specifically attach great significance to the fact that a certain fence which at one time abutted the disputed property was removed by representatives of their predecessors in interest. They contend that this demonstrates an exercise of dominion and control over the disputed area by plaintiffs' predecessors, thus interrupting or negating defendants' adverse possession.

Such a contention is defective in two respects. The record clearly discloses that the fence was torn down only after defendants' predecessors in interest agreed to its removal. This does not demonstrate an exercise of dominion, rather it implies that that the representatives of plaintiffs' predecessors in interest believed that the fence was situated on property belonging to defendants' predecessors in interest and that their approval was necessary before it could be removed. Moreover, testimony indicates that after the fence was removed, defendants and their predecessors in interest continued, without objection by plaintiffs or their predecessors, to occupy and use the contested property in the same fashion as they had done previously, for a period in excess of the ten years required by A.R.S. § 12–526.

In reviewing the evidence as a whole and the inferences to be drawn therefrom in the light most favorable to upholding the trial judge's decision, Almada v. Ruelas, 96 Ariz. 155, 393 P.2d 254 (1964), Todaro v. Gardner, 72 Ariz. 87, 231 P.2d 435 (1951), Rorebeck v. Criste, *supra,* we hold that there

was adequate evidence to support the trial judge's findings. This conclusion is buttressed by the fact that the trial judge in this case visited the site of the property in dispute, and thus had an additional advantage over that normally inherent in being in the best position to evaluate the demeanor and credibility of oral witnesses.

■ Plaintiffs' final contention is that the trial court failed to make findings of fact as to all the essential elements of this case, and that such failure is reversible error. A court is only required to make findings of "ultimate facts." Gilliland v. Rodriquez, 77 Ariz. 163, 268 P.2d 334 (1954). The ultimate facts in the case at bar would be those which are necessary to establish the existence of adverse possession.

A careful reading of the trial court's findings shows that, although the findings were not as explicit as they might have been, they did include all of the "ultimate facts" of this case. Paragraph 2 of the findings reads as follows:

"2. That defendants, and each of them, have, by themselves and their predecessors in interest, been in *actual, exclusive and adverse possession* of said real property described in paragraph II of plaintiffs' complaint *for more than ten (10) years prior to the filing of plaintiffs' action herein, claiming to own the same and in fee against the whole world and have used, cultivated and enjoyed the said property for an excess of ten (10) years before the filing of said complaint,* except the westerly fifteen (15) feet thereof." (Emphasis added).

While the findings do not specifically refer to open and visible, hostile and continuous possession, these terms are encompassed within the definition of adverse possession. By saying that defendants and their predecessors had been in adverse possession of the property in question, the trial court used language defined by A.R.S. § 12–521, subsec. A, par. 1 to mean that pos-

session is "actual and visible" "commenced and continued" and "hostile to" the claims of others. Therefore no "ultimate fact" was missing from the findings.

 The thrust of plaintiffs' argument seems to be that when a trial court makes a finding of "ultimate fact", which in addition has legal connotations, the court must also set forth all the underlying and subsidiary evidentiary facts which gave rise to the ultimate fact. Such a contention was rejected in Gilliland v. Rodriquez, *supra*, where our Supreme Court stated:

"Defendants object to the court's findings upon the ground that they are too general; that it is impossible to tell therefrom on what underlying facts the court relied; that no subsidiary findings are made to indicate the evidence on which the ultimate facts were based; and they are not supported by the evidence.

"A court is called upon to make findings of only ultimate facts and is not required to bolster them by subsidiary findings on evidentiary matters upon which such ultimate facts are based, McGee v. Nee, 8 Cir., 113 F.2d 543, and if there is competent evidence of the existence of such facts, and they are such that this court is able to test the validity of the judgment, the trial court has met its obligation under the provisions of Rule 52(a), Rules of Civil Procedure, section 21–1028 A.C.A.1939. The ultimate test of the adequacy thereof is whether they are pertinent to the issues and comprehensive enough to provide a basis for the decision. Schilling v. Schiertzer-Cummins Co., 79 U.S.App. D.C. 20, 142 F.2d 82." 77 Ariz. 163 at 167, 268 P.2d 334 at 337.

 The purpose behind requiring the trial court, upon request, to making findings of fact, is to enable an appellate court to examine the basis upon which the trial court relied in reaching its ultimate judgment. City of Phoenix v. Consolidated Water Co., 101 Ariz. 43, 415 P.2d 866

(1966); Gilliland v. Rodriquez, *supra.* That purpose has been satisfied here.

The judgment is affirmed.

JACOBSON, C. J., Division 1, and EUBANK, P. J., concur.