840 P.2d 1051

**Anne LEWIS, Successor Trustee of the Cynthia K. Earle Irrevocable Trust, Plaintiff/Defendant-Appellee/Cross-Appellant,**

**v.**

**PLEASANT COUNTRY, LTD., an Arizona limited partnership, Defendant/Plaintiff-Appellant/Cross-Appellee.**

**PLEASANT COUNTRY, LTD., an Arizona limited partnership, Third-Party Plaintiff-Cross-Appellee,**

**v.**

**Andrew KRAVCHENKO, Personal Representative of the Estate of Cynthia K. Earle, Third-Party Defendant-Cross-Appellant.**

**No. 1 CA-CV 90-365.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 8, 1992.

Reconsideration Denied Nov. 10, 1992.

Murphy & Posner by John A. Murphy, Jr., Jean Gray Platt, Phoenix, for appellant, cross-appellee.

Molloy, Jones & Donahue, P.C. by Mark Sifferman, Phoenix, for appellees, cross-appellants.

OPINION

EHRLICH, Judge.

Pleasant Country, Ltd. ("Pleasant Country") requests that we review the trial court's grant of quiet title and costs and attorneys' fees to Anne Lewis, Successor Trustee of the Cynthia K. Earle Irrevocable Trust ("Lewis"). Pleasant Country also challenges the denial of its forcible detainer action against Lewis and Andrew Kravchenko, personal representative of Earle's estate ("Kravchenko"), and the trial court's denial of its motion for new trial. A cross-appeal was filed by Kravchenko, requesting that, in the event the quiet title judgment is reversed, the portion of the judgment in favor of Pleasant Country be vacated. Pleasant Country and Lewis request their attorneys' fees on appeal. For the following reasons, we affirm the judgment, the grant of costs and attorneys' fees and the denial of the motion for new trial, and award Lewis her attorneys' fees on appeal.

We view the evidence and all reasonable inferences therefrom in the light most favorable to sustaining the judgment, affirming it if there is any evidence to support the trial court's findings. *Paul Schoonover v. Ram Construction, Inc.*, 129 Ariz. 204, 205, 630 P.2d 27, 28 (1981). Further, absent an abuse of discretion, we will not disturb a denial of motion for new trial. *Adroit Supply Co. v. Electric Mut. Liability Ins. Co.*, 112 Ariz. 385, 389, 542 P.2d 810, 814 (1975); *Boatman v. Samaritan Health Services, Inc.*, 168 Ariz. 207, 212, 812 P.2d 1025, 1030 (App.1990).

FACTS AND PROCEDURAL HISTORY

At issue is the ownership of a ten-acre parcel of land known as Solo Springs. In 1960, Udall and Koepke Ranches, Inc. ("the Udall group") bought 90 acres of land and leased approximately 14,250 adjacent acres from Phoenix Title and Trust Company Trust No. 1962 ("Trust 1962"). Included in the land the Udall group purchased was a portion of Section 16, Township 7 North, Range 1 East, Gila and Salt River Base and Meridan ("section 16"); the remainder of section 16 was contained in the property the Udall group leased. Kenyon Udall ("Mr. Udall"), who was part of the Udall group, accompanied the surveyor, who determined the legal description of the land the group was buying, to the property and pointed out the land that the group intended to buy; the land identified by Mr. Udall included Solo Springs. However, unknown to either the Udall group or Trust 1962, the surveyor mistakenly did not include Solo Springs in the legal description of the purchased property, but instead included it in the description of the leased property. Based upon the surveyor's legal descriptions, the Udall group and Trust 1962 subsequently executed the land purchase and lease agreements.

In 1962, Cynthia K. Earle ("Earle") bought Solo Springs from the Udall group, based upon the same legal description used when the group purchased it, and assumed the portion of its lease which encompassed the remainder of section 16. Believing she owned the property, in 1965, Earle built a

house, water tower, fuel tank, generator, propane tank, boarding shed, windmill, guest house, feed shed and metal sheds on Solo Springs. In addition, she placed a mobile home and constructed a dead-end access road on the property.

In 1973 Earle inadvertently discovered that there could be a discrepancy between Solo Springs' legal description and her deed's depiction of the property. The possibility that her deed did not include Solo Springs again came to Earle's attention in approximately 1978 when she registered for the water rights to the property. At that time, Earle hired a surveyor who, in October 1978, determined that Solo Springs did not lie within the legal description in her deed but rather was contained in the property which she leased.

On January 11, 1979, Pleasant Country bought approximately 10,000 acres from Trust 1962's successor, included in the legal description of which was all of section 16 except for the portion that had been deeded to Earle. In September 1985 Earle died. On March 24, 1988, the lawyer for Earle's estate sent a letter to Pleasant Country claiming ownership of Solo Springs by adverse possession and tendering to it a quit claim deed and $5 for the property in accordance with Ariz.Rev.Stat. Ann. section ("A.R.S. §") 12-1103(B). Pleasant Country refused the estate's offer and filed a forcible entry and detainer action to eject John B. Alward, the successor trustee of the Earle trust[1] from Solo Springs. In response, Alward raised the defense of mistake and subsequently instituted suit for quiet title of the land.

The two matters were consolidated and proceeded to trial. The trial court found that, beginning in 1965, Earle actually, visibly, and in a hostile manner possessed Solo Springs, thereby obtaining adverse possession in 1975. In addition, the court held that Pleasant Country did not purchase Solo Springs in its 1979 transaction with Trust 1962's successor as Earle had acquired adverse title to the land by that time. Accordingly, the trial court found in favor of Lewis and Kravchenko regarding the forcible entry and detainer action. Pursuant to Pleasant Country's third-party complaint, the trial court awarded it title to the ten acres of land which had been deeded to Earle in her 1962 transaction with the Udall group. Finally, the trial court awarded Lewis her costs and attorneys' fees pursuant to A.R.S. § 12-1103(B). Pleasant Country filed a motion for new trial, which was denied. It timely appealed and Kravchenko cross-appealed.

## DISCUSSION

The elements of adverse possession are set forth in A.R.S. § 12-526(A), which states:

> A person who has a cause of action for recovery of any lands, tenements or hereditaments from a person having peaceable and adverse possession thereof, cultivating, using and enjoying such property, shall commence an action therefor within ten years after the cause of action accrues, and not afterward.

According to A.R.S. § 12-521(A):

> 1. "Adverse possession" means an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another.
>
> 2. "Peaceable possession" means possession which is continuous, and not interrupted by an adverse action to recover the estate.

Under the statutes, a claimant must show that the adverse possession was actual, open and notorious, hostile, under a claim of right and was exclusive and continuous for a ten-year period. *Ellingson v. Fuller,* 20 Ariz.App. 456, 458, 513 P.2d 1339, 1341 (1973); *Rorebeck v. Criste,* 1 Ariz.App. 1, 3-4, 398 P.2d 678, 680-81 (1965).

Pleasant Country asserts that the trial court erred in finding that Lewis was entitled to adverse possession of Solo Springs and in denying its forcible detainer action and its motion for new trial because (1) a tenant may not bring an adverse posses-

1. John B. Alward, who was a successor trustee for the Earle trust, died in 1989, just prior to the commencement of trial. Anne Lewis was appointed the successor trustee after the trial.

sion action against its landlord, (2) Earle's use of the property was permissive, not hostile, (3) Pleasant Country did not have notice of Earle's claim to the property, (4) the statute of limitations for its forcible detainer action had not expired and (5) its forcible detainer action was wrongfully denied. In addition, Pleasant Country requests that this court reverse the court's award of costs and attorneys' fees to Lewis because she was not entitled to judgment in her favor. Kravchenko cross-appeals requesting that, in the event we find that Earle did not adversely possess Solo Springs, we vacate the trial court's grant of ten acres of land to Pleasant Country. Finally, Pleasant Country and Lewis request their attorneys' fees on appeal.

*A. Adverse Possession Against Landlord*

Pleasant Country first argues that the trial court erred in finding that Earle adversely possessed Solo Springs because, as is demonstrated by *Quon v. Sanguinetti,* 60 Ariz. 301, 303, 135 P.2d 880, 880 (1943), *Gibbs v. Basham,* 53 Ariz. 357, 364, 89 P.2d 630, 633 (1939), and A.R.S. § 33–324, a tenant cannot claim adverse possession against its landlord. Lewis responds that even if, contrary to the court's findings, Earle was a tenant of Solo Springs, she would not be precluded from claiming adverse possession because it is the land's title and not its possession which is at issue. Pleasant Country further argues that because Earle had the right to possess the property under the lease, her possession could not be wrongful, adverse or by mistake.

The cases of *Quon,* 60 Ariz. 301, 135 P.2d 880, and *Gibbs,* 53 Ariz. 357, 89 P.2d 630, and A.R.S. § 33–324 are not applicable to this case because Earle came into possession of Solo Springs under a contract of sale and not under a lease agreement. The courts in both *Quon,* 60 Ariz. at 303–05, 135 P.2d at 881, and *Gibbs,* 53 Ariz. at 364, 89 P.2d at 633, based their application of the rule estopping tenants from challenging their landlord's title on the finding that valid lease agreements existed. Similarly, A.R.S. § 33–324 prohibits a person who enters into possession of property *under a lease* from claiming title to land against his landlord.[2]

Conversely, here the evidence establishes that, until at least 1973, the parties believed that Solo Springs was a part of the property which the Udall group, and then Earle, purchased. Therefore, this is not a situation where the parties intended for a lease agreement to control the transfer of the land. The estoppel rule barring a tenant from denying its landlord's title is not applicable when there is no landlord-tenant relationship. *Sibley v. Jeffreys,* 76 Ariz. 340, 344, 264 P.2d 831, 833 (1953); *Haynes v. Switzer Real Estate Corp.,* 100 Ind.App. 410, 196 N.E. 133, 135 (1935); *Putnam v. McClain,* 198 Iowa 287, 199 N.W. 261, 262 (1924); *Foster v. Focht,* 102 Okl. 261, 229 P. 444, 446 (1924); *Lockwood v. Carter Oil Co.,* 73 W.Va. 175, 80 S.E. 814, 817 (1913); *Ireton v. Ireton,* 59 Kan. 92, 52 P. 74, 75 (1898); *Shew v. Call,* 119 N.C. 450, 26 S.E. 33, 34 (1896); *Davis v. Delaware & H. Canal Co.,* 109 N.Y. 47, 15 N.E. 873, 874 (1888); 49 Am.Jur.2d *Landlord and Tenant,* § 110 (1970) (Supp.1992). Accordingly, Earle was not estopped based upon her alleged tenancy from claiming adverse possession of Solo Springs.

We also reject Pleasant Country's argument that Earle could not wrongfully, adversely, or mistakenly possess Solo Springs because she had a right to possess the property under the lease. In order for a possession to be permissive, the possessor must acknowledge that he holds the property in subordination to the owner's title. *Hubbard v. Curtiss,* 684 P.2d 842, 848 (Alaska 1984); 7 R. Powell, *The Law of Real Property* ¶ 1014 at 721 (Rohan rev. ed. 1979); 3 Am.Jur.2d *Adverse Possession* § 36 (1962). As previously discussed, Earle's possession of Solo Springs was initiated under a purchase contract and not a lease. Therefore, Pleasant Country's argu-

2. A.R.S. § 33–324 states that "[w]hen a person enters into possession of real property under a lease, he may not, while in possession, deny the title of his landlord in an action brought upon the lease by the landlord or a person claiming under him."

ment is inapposite as Earle believed that she had superior title to the property and not that her title was subordinate to that of Pleasant Country.

Further, a person may bring an adverse possession claim regardless of how he came into possession of the property. Although the Arizona cases which have addressed adverse possession by mistake all involved a claimant who had no right to possess the land, *see Higginbotham v. Kuehn,* 102 Ariz. 37, 38–39, 424 P.2d 165, 166–67 (1967) (mistaken possession of adjoining property up to visible boundary line); *Gunther & Shirley Co. v. Presbytery,* 85 Ariz. 56, 58–59, 331 P.2d 257, 258–59 (1958) (mistaken possession by tax deed purchaser before right to possess matured); *Trevillian v. Rais,* 40 Ariz. 42, 45–46, 9 P.2d 402, 403 (1932) (mistaken possession of adjoining property up to visible boundary line); *Ziggy's Opportunities v. I-10 Industrial Park Dev.,* 152 Ariz. 104, 109, 730 P.2d 281, 286 (App.1986) (holding land beyond boundary line up to a fixed, visible boundary line based on mistake); *Rorebeck,* 1 Ariz.App. at 5, 398 P.2d at 682 (mistaken possession of adjoining property up to fence line), they do not limit the application of adverse possession to such narrow circumstances. A person whose possession is initially permissive may bring an adverse possession claim upon his clear disclaimer of the true owner's title. *Gospel Echos Chapel, Inc. v. Wadsworth,* 19 Ariz.App. 382, 384, 507 P.2d 994, 996 (1973). As stated in *Phoenix Jewish Community Council v. Leon,* 102 Ariz. 187, 190, 427 P.2d 138, 141 (1967), "it matters not whether [the claimant] made her initial entry as a tenant or as a purchaser, for the facts clearly show that she maintained all of the elements of adverse possession for more than the statutory period." Accordingly, even if Earle's initial possession of Solo Springs was permissive, she was not precluded from bringing an adverse possession action.

We find that the trial court did not err in finding that Lewis could establish Earle's adverse possession despite the alleged landlord-tenant relationship or a right to possess the property under the lease.

*B. Permissive Nature of Possession*

Pleasant Country argues that the trial court erroneously found that Earle's possession of Solo Springs was not permissive. According to it, the court erred in relying upon Earle's improvements (e.g., the building of a house) to the property as evidence that her possession was not permissive because under the lease she had the right to make such improvements. Pleasant Country further challenges the trial court's failure to make specific factual findings regarding why Earle's use was hostile.

Lewis responds that Pleasant Country's argument is based upon its assertion that Earle was a tenant of Solo Springs, which is an incorrect presumption as it has already been established that Earle entered and held the land believing that she was the owner. In addition, Lewis contends that the trial court's factual findings regarding why the use was hostile were sufficient as they included the definitive facts surrounding the issue.

A claim is hostile when the adverse possessor declares that he is the owner of the property against both the true owner, *Combs v. DuBois,* 135 Ariz. 465, 468, 662 P.2d 140, 143 (App.1982), and the world. *Rorebeck,* 1 Ariz.App. at 4, 398 P.2d at 681. As stated by the court in *Trevillian,* 40 Ariz. at 45–46, 9 P.2d at 403:

> Where a person, acting under a mistake as to the true boundary line between his land and that of another, takes possession of land of another believing it to be his own, up to a mistaken line, claims title to it and so holds, the holding is adverse and, if continued for the requisite period, will give title by adverse possession. And the fact that on taking possession he had no intention of taking what did not belong to him, ... or the fact that both owners were mistaken as to the true boundary line, does not affect the operation of the rule. In all cases the intention and not the mistake is the test by which the character of the possession is determined, it being *prima*

*facie* sufficient that actual, visible, and exclusive possession is taken under a claim of right without reference to the fact that the possession was based on mistake. [Citation omitted; emphasis original.]

Similarly, in *Higginbotham,* 102 Ariz. at 38, 424 P.2d at 166, the claimant's property line was mistakenly identified to her at the time of purchase. The court found that "[a] claim of right is nothing more than the intention of the party in possession to appropriate and use the land as his own to the exclusion of others irrespective of any semblance or shadow of actual title or right."

Pleasant Country contends that Earle performed no act constituting actual and visible appropriation of Solo Springs. The evidence, however, plainly refutes this assertion. Upon the execution of the 1962 sale agreement, Earle engaged in activities consistent with the parties' belief that she owned Solo Springs. For example, in 1965, Earle built a house, water tower, windmill and other facilities on the property. In addition, she consistently paid the tax assessments for what she believed were Solo Springs. Accordingly, we hold that the court did not err in finding that Earle's possession was hostile.

We further find that the trial court's findings of fact were sufficient to support its holding. "A trial court which makes a finding of ultimate fact is not required to set forth all underlying and subsidiary and evidentiary facts giving rise to the ultimate fact." *Jones v. Teilborg,* 151 Ariz. 240, 247–48, 727 P.2d 18, 25–26 (App.1986); *see also Gilliland v. Rodriquez,* 77 Ariz. 163, 167, 268 P.2d 334, 337 (1954); *Ellingson,* 20 Ariz.App. at 459, 513 P.2d at 1342. Here, the trial court found that "[t]he use and possession of the Solo Springs property by Cynthia Earle and her successors was not permissive." This was adequate to support its finding that Earle's use of the land was hostile.

*C. Notice of Claim*

Pleasant Country contends that the trial court erred in finding that it had notice of Earle's claim to Solo Springs based upon the 1960 negotiations between Trust 1962 and the Udall group and Earle's improvements to the property. Pleasant Country asserts that actual notice is necessary to change the nature of initially-permissive use to a hostile claim. According to Pleasant Country, the 1960 negotiations between Trust 1962 and the Udall group did not constitute actual notice because the Udall group never told Trust 1962 at that time that it was claiming adverse possession of Solo Springs and there is no evidence that either Earle or the Udall group informed Trust 1962 or Pleasant Country of the claim prior to 1978. In addition, Pleasant Country claims that the improvements could not comprise actual notice of Earle's claim because it was not aware of them and, further, Earle had a right under the lease to undertake such improvements. Lewis responds that either actual or constructive notice is sufficient in establishing the elements of adverse possession. According to Lewis, the 1960 negotiations and Earle's improvements to the property provided Pleasant Country with actual notice, while the improvements also constituted constructive notice of Earle's claim to Solo Springs.

To require that a land owner have actual knowledge of a claimant's actions in order to establish notice would foreclose obtaining title by adverse possession when the owner removes himself from any contact with the property. We do not believe that this is the intent of the adverse possession statutes, as there is no requirement in either A.R.S. §§ 12–521(A) or 12–526(A) that the true owner actually be aware of the claimant's appropriation of the land. In addition, Arizona courts have allowed presumptive notice to be the basis of an adverse possession claim. *Tenney v. Luplow,* 103 Ariz. 363, 367–68, 442 P.2d 107, 111–12 (1968) (adverse possession may be based on presumption that facts and circumstances indicate claimant repudiates owner's title); *Costello v. Muheim,* 9 Ariz. 422, 428, 84 P. 906, 908 (1906) (to give notice of claim, hostile acts must carry presumption that owner would observe

them if he visited property); *Rorebeck,* 1 Ariz.App. at 5, 398 P.2d at 682 (to establish adverse possession claimant need only show "that he occupied or used the land as would an ordinary owner of the same type of land taking into account the uses for which the land was suitable.")

Trust 1962 acquired, at a minimum, presumptive notice of the Udall group's intent to own the property at the time of the 1960 negotiations. Although Pleasant Country argues that the Udall group failed to notify Trust 1962 during the negotiations that it intended to adversely claim Solo Springs, the evidence establishes that Trust 1962 believed it had sold the property. This information is attributable to Pleasant Country because, even though it was not a party to the 1960 negotiations, it was aware of Earle's ownership claim when it bought its property from Trust 1962.[3] *Cf. Conwell v. Allen,* 21 Ariz.App. 383, 384, 519 P.2d 872, 873 (1974) (although planting and maintaining grass on adversely-claimed property may have provided notice to original owner, such actions were insufficient to charge subsequent owner with notice).

As the evidence shows that the Udall group intended to, and believed that it did, purchase Solo Springs, there is no reason why it would tell Trust 1962 that it planned to adversely possess the land. Similarly, Earle had no reason prior to the 1973 discovery that she may not own Solo Springs to inform either Trust 1962 or Pleasant Country of an adverse claim.

In addition, Pleasant Country had presumptive notice of Earle's claim to Solo Springs because, had it visited the property, Earle's actions would have given rise to the presumption that she claimed ownership of the land. Earle's erection of a house, water tower, windmill and other improvements on Solo Springs was consistent with the actions of an ordinary owner and could reasonably give rise to the presumption that she claimed ownership. *Cf. Nicholas v. Giles,* 102 Ariz. 130, 133, 426 P.2d 398, 401 (1967) (occasionally driving by land does not constitute visible possession); *Costello,* 9 Ariz. at 426, 84 P. at 907 (sinking existing mining shaft from six to ten feet insufficient to give notice of adverse claim). We find that the trial court did not err in finding that Pleasant Country had notice of Earle's claim to Solo Springs.

### D. *Forcible Detainer Statute of Limitations*

Pleasant Country contends that the trial court erred in finding that the filing of its forcible detainer action fell outside the statute of limitations. Under A.R.S. § 12–526, a person must commence an action for the recovery of property from another having peaceable and adverse possession within ten years after the cause of action accrues. According to Pleasant Country, the trial court's ruling that the statute of limitations had expired prior to the May 17, 1988, filing of its claim was erroneous because it did not have a cause of action for recovery of the property until it received the estate's March 24, 1988, letter making a hostile claim. Pleasant Country asserts that the earliest time which its cause of action accrued would be when Solo Springs was surveyed and platted in October 1978, in which case the statute of limitations would not have expired when it filed its May 17, 1988, forcible detainer action.

In response, Lewis and Kravchenko, citing *Sorenson v. Costa,* 32 Cal.2d 453, 196 P.2d 900, 905 (1948), and *Ybarra v. Newton,* 714 S.W.2d 353 (Tex.App.1986), argue that when possession of property commences under a mistake of fact, such as an erroneous legal description, the statute of limitations begins to run upon possession and not upon the discovery of the mistake. It is irrelevant, they argue, when the land was surveyed and platted because there is no requirement that the boundaries must be surveyed before an adverse possession claim begins.

The case of *Sorenson,* 196 P.2d at 905, is distinguishable because that court relied

3. The record establishes that prior to Pleasant Country's purchase of the property from Trust 1962, its attorneys engaged in both telephone conversations and written correspondence with the Earle estate's attorneys regarding Earle's ownership claim to Solo Springs.

upon California statutes which provided when a cause of action for the recovery of property accrues; Arizona does not have a similar statute. However, the court in *Ybarra,* 714 S.W.2d at 355, did not rely upon a statute to determine when the cause of action accrued, but instead found that the statute of limitations began to run when the claimant obtained possession of the property. The claimant in *Ybarra* resided in a house for 17 years before discovering that she had actually purchased the adjacent property. *Id.* at 354–55. In finding that the claimant had met all of the requirements of adverse possession, the court concluded that she held the land in peaceable and adverse possession from the time she moved in until she was notified of her mistake 17 years later. *Id.* at 355. Accordingly, the court held that any action the true owner may have for recovery of the property was barred by the ten-year statute of limitations. *Id.* at 356.

In Arizona, the statute of limitations begins to run when the claimant makes a "clear disclaimer of the title" of the owner. *Gospel Echos Chapel,* 19 Ariz. App. at 384, 507 P.2d at 996. Here, similar to the claimant in *Ybarra,* 714 S.W.2d at 354, Earle engaged in open and notorious activities consistent with her belief that she owned Solo Springs since at least 1965 when she began her improvements to the property. Although Earle was mistaken as to who actually owned Solo Springs, it is her intention and not the mistake that determines the character of her possession. *Gunther,* 85 Ariz. at 59, 331 P.2d at 259; *Trevillian,* 40 Ariz. at 46, 9 P.2d at 403.

As previously discussed, Trust 1962 had notice of the Udall group's claim to Solo Springs at the time the sale and lease documents were executed. This was sufficient to provide both Trust 1962 and Pleasant Country with a clear disclaimer of title and thus any cause of action which Pleasant Country had for recovery accrued in 1965. Contrary to Pleasant Country's position, property is not immune from adverse possession claims simply because it has not been surveyed and platted. *See Fritts v. Ericson,* 103 Ariz. 33, 35, 436 P.2d 582, 584 (1968). Further, it is undisputed that, in 1960, Solo Springs was surveyed in preparation for the sale and lease transactions. The legal description of Solo Springs determined by that surveyor was correct; the surveyor merely erred by including it in the portion of land that was to be leased, not purchased. Therefore, as Pleasant Country had notice of Earle's claim since 1965, the ten-year statute of limitations had expired when Pleasant Country filed its forcible detainer action in 1988.

*E. Merits of Forcible Detainer Action*

Finally, Pleasant Country asserts that the trial court erred in denying its forcible detainer action because, as the estate's March 24, 1988, letter contained a hostile claim against Solo Springs, Pleasant Country was entitled to terminate the lease and eject Earle's estate from all of the leased property. Even if the estate's adverse possession claim to Solo Springs was mature at the time of its letter, contends Pleasant Country, the property remained part of the lease and thus could be terminated.

As previously discussed, Pleasant Country filed its forcible detainer action outside the statute of limitations. Accordingly, we need not consider whether, based upon the merits of Pleasant Country's claim, the trial court erred in denying it relief. We reject Pleasant Country's contention that, even if the statute of limitations had expired when it filed its action, it still could terminate the lease and eject Earle's estate because the issue of who properly possesses Solo Springs must be determined in light of the mutual mistake which arose out of the sale document and not based upon a lease which neither executing party intended to apply to the property. As we find that the lease agreement does not govern who is permitted possession of Solo Springs, Pleasant Country is not entitled to eject the estate from the property under the terms of the lease.

*F. Grant of Land to Pleasant Country*

Kravchenko requests that, in the event this court finds that the estate does not have adverse possession of Solo Springs,

the trial court's grant of ten acres of land to Pleasant Country be vacated. As we find that the estate does have adverse possession of Solo Springs, we need not address this issue. *Vigil v. Herman,* 102 Ariz. 31, 36–37, 424 P.2d 159, 164–65 (1967).

*G. Attorneys' Fees*

Pleasant Country requests that we reverse the trial court's award of costs and attorneys' fees to Lewis because she was not entitled to judgment in her favor. However, as we have found that the court did not err in granting Lewis quiet title to Solo Springs, she was entitled to the award if she met the requirements of A.R.S. § 12–1103(B). We find that the statutory criteria were met as, 20 days prior to bringing its quiet title action, the estate asked Pleasant Country to execute a quit claim deed and tendered $5 to it for the execution and delivery of the deed. Accordingly, we will not reverse the court's award.

In addition, both Pleasant Country and Lewis request attorneys' fees on appeal, based upon A.R.S. § 12–1103(B). In making similar arguments, the parties contend that although *Chantler v. Wood,* 6 Ariz. App. 325, 326, 432 P.2d 469, 470 (1967), states that A.R.S. § 12–1103(B) does not allow for attorneys' fees on appeal, under *Mariposa Development Co. v. Stoddard,* 147 Ariz. 561, 565, 711 P.2d 1234, 1238 (App.1985), such fees are awardable.

The exclusive basis for attorneys' fees for quiet title actions lies in A.R.S. § 12–1103. *Lange v. Lotzer,* 151 Ariz. 260, 261, 727 P.2d 38, 39 (App.1986). In *Chantler,* 6 Ariz.App. at 326, 432 P.2d at 470, Division One of this court found that A.R.S. § 12–1103(B) did not provide for attorneys' fees on appeal because the statute was contained in Chapter 8 of the Arizona Revised Statutes, which solely addresses trial court remedies. However, Division Two of this court subsequently came to the contrary conclusion in *Mariposa,* 147 Ariz. at 565, 711 P.2d at 1238, reasoning that the remedies provided for in Chapter 8 extend beyond the trial court, as exemplified by A.R.S. §§ 12–1127 and 12–1160.

Based upon the provisions of our other attorneys' fees statutes regarding fees on appeal and the existence of remedies in Chapter 8 which are not limited to the trial level, we find that attorneys' fees are awardable on appeal pursuant to A.R.S. § 12–1103(B). A review of our numerous attorneys' fees statutes reveals that, in general, they do not specify at what court level fees may be granted. *E.g.,* A.R.S. §§ 12–341.01, 12–684, 12–2454. The statutes which do limit an award of fees to a certain court level include restrictive language in their text. *E.g.,* A.R.S. §§ 13–3602, 44–1711.

The language of A.R.S. § 12–1103(B) does not restrict the level of court which may grant attorneys' fees. We will not construe a statute in a manner which is not within the manifest intention of the legislature, as is demonstrated by the statute itself. *City of Phoenix v. Donofrio,* 99 Ariz. 130, 133, 407 P.2d 91, 93 (1965). If the legislature had intended to limit the level of court which could award fees under A.R.S. § 12–1103(B), then it could have included restrictive language as it did in other statutes. Therefore, we interpret A.R.S. § 12–1103(B) as allowing attorneys' fees to be awarded on appeal. We find additional support for this conclusion based upon the fact that the remedies contained in Chapter 8 are not exclusive to the trial court. *See* A.R.S. §§ 12–1127, 12–1160; *Mariposa,* 147 Ariz. at 565, 711 P.2d at 1238.

As previously discussed, Earle's estate fulfilled the requirements of A.R.S. § 12–1103(B). Therefore, in the exercise of our discretion, we grant Lewis her attorneys' fees in an amount to be determined upon compliance with Arizona Rule of Civil Appellate Procedure 21(c).

## CONCLUSION

Based upon the foregoing, we affirm the trial court's award of quiet title and costs and attorneys' fees to Lewis and its denial of Pleasant Country's forcible detainer action. Because we are upholding the judgment, it is unnecessary for us to rule on the issue raised by the cross-appeal. As we find that the trial court did not abuse

its discretion, we will not disturb the denial of the motion for new trial. Finally, we grant attorneys' fees on appeal to Lewis.

KLEINSCHMIDT, P.J., and GERBER, J., concur.