NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

WALTER A. HEUSCHKEL and BONNIE L. HEUSCHKEL, husband and
wife, *Plaintiffs/Counterdefendants/Appellees*,

*v.*

COLLEEN RAE YOUNG; MICHELE (ROBINSON) BERGMANN,
*Defendants/Counterclaimants/Appellants*.

No. 1 CA-CV 14-0501
FILED 6-30-2015

Appeal from the Superior Court in Mohave County
No. B8015CV201304007
The Honorable Randolph A. Bartlett, Judge

**AFFIRMED**

COUNSEL

Gregory & Elias, PLC, Bullhead City
By Kenneth L. Gregory, T'shura-Ann Elias
*Counsel for Plaintiffs/Counterdefendants/Appellees*

Law Offices of Gregory A. Ring, Bullhead City
By Gregory A. Ring
*Counsel for Defendants/Counterclaimants/Appellants*

---

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Maurice Portley and Judge Michael J. Brown joined.

---

**G E M M I L L**, Judge:

¶1 Colleen Young and Michele Bergmann appeal the Mohave County Superior Court's summary judgment quieting title to a parcel of land in favor of Appellees Walter and Bonnie Heuschkel ("the Heuschkels"). For the following reasons, we affirm.

**FACTS**

¶2 This case involves a dispute over ownership of six lots in Bullhead City, Arizona ("the Property"). The Property was originally owned by Vicki Crawford and Charlene Shreves, as tenants in common with equal fifty-percent interests. Crawford died in June 1998 and Shreves died in August 2002. Appellants Bergmann and Young ("Bergmann/Young") are beneficiaries of the two respective estates.

¶3 In either May or June of 2002, before Shreves passed away, the Heuschkels began negotiating to buy the Property after they saw it advertised for sale. They entered into dealings with Shreves' step-daughter Rebecca Lasa, who claimed that she had authority on behalf of both owners of record to sell and dispose of the property. Two months after Shreves' death, the Heuschkels and Lasa executed two documents involving transfer of the Property. The documents were titled, respectively, "Sale Agreement to Purchase Real Estate" and "Commercial Lease." The Heuschkels immediately took possession of the Property and began to operate their business thereon. By the time this litigation began, the Heuschkels had paid the Property's full purchase price.

¶4 In June 2007, the probate issues of the estates of Crawford and Shreves were resolved and finalized. Lasa, acting as the Personal Representative of Crawford's estate, deeded Crawford's interest in the Property to her heirs. The Personal Representative of Shreves' estate

2

deeded Shreves' interest in the property to her heirs. In total, twelve different grantees were given interests in the Property.[1]

¶5 In 2012, the Heuschkels hired counsel and sent letters to all twelve heirs, demanding that the heirs convey their respective fractional interests in the Property to the Heuschkels. Of the twelve, ten complied with the demand and quitclaimed their respective interests to the Heuschkels. Bergmann/Young, however, refused to comply. The Heuschkels filed a quiet title action against them in superior court, claiming title to the Property by adverse possession.

¶6 Bergmann/Young filed a motion for summary judgment, arguing the Heuschkels had not proven they possessed the land in a manner hostile and adverse to the interests of Bergmann/Young for the statutory period. The Heuschkels filed a cross-motion for summary judgment. The court denied Bergmann/Young's motion and granted judgment in favor of the Heuschkels. The court then entered an order quieting title and awarding attorney fees, from which Bergmann/Young timely appeal. This court has jurisdiction under Arizona Revised Statutes ("A.R.S.") sections 12-2101(A)(3) and -2101(A)(7).

## DISCUSSION

¶7 This court reviews de novo a trial court's grant of summary judgment, viewing the evidence in the light most favorable to the party against whom judgment was entered. *Law v. Verde Valley Med. Ctr.*, 217 Ariz. 92, 94, ¶ 7, 170 P.3d 701, 703 (App. 2007).

¶8 Adverse possession is defined as "actual and visible appropriation of [ ] land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." A.R.S. § 12-521(A)(1). Adverse possession of land requires a claimant to show that the possession was actual, open, hostile, pursuant to a claim of right, and continuous and exclusive for a ten-year period. *Lewis v. Pleasant Country, Ltd.*, 173 Ariz. 186, 189, 840 P.2d 1051, 1054 (App. 1992).

¶9 Bergmann/Young argue that the Heuschkels cannot meet the requirements of adverse possession for two reasons. First, they claim that

---

[1] Collectively, Bergmann/Young claim ownership of 16.25 percent of the land: Bergmann asserts that she is entitled to a 6.25 percent interest, and Young asserts that she is entitled to a 10 percent interest.

the Heuschkels entered the Property under a lease, rather than a purchase agreement, and therefore had no claim of right. Second, because the Heuschkels entry on the Property was permissive, Bergmann/Young assert they did not possess the land hostile to the claims of all others.

## A.    The Sale Agreement and Commercial Lease

**¶10**        Bergmann/Young first argue that the Heuschkels' claim is barred from the outset, because they were tenants and not purported owners of the Property. It is well-settled that a tenant cannot bring a claim for adverse possession against its landlord. *Pleasant Country*, 173 Ariz. at 189–90, 840 P.2d at 1054–55; *Quon v. Sanguinetti*, 60 Ariz. 301, 303, 135 P.2d 880, 880 (1943); *Gibbs v. Basham*, 53 Ariz. 357, 364, 89 P.2d 630, 633 (1939); *see also* A.R.S. § 33-324. When, however, there is no landlord-tenant relationship, the rule barring a tenant from bringing an adverse possession claim does not apply. *Pleasant Country*, 173 Ariz. at 190, 840 P.32d at 1055.

**¶11**        When a question arises as to the relationship created by real estate contracts, no single provision of the contracts is dispositive. *E-Z Livin' Mobile Sales, Inc. v. Van Zanen*, 26 Ariz. App. 363, 364, 548 P.2d 1175, 1176 (App. 1976). Neither are the names given to the instruments determinative of their effect. *Id.* Instead, the court must look to the purpose of the instruments as revealed by their substance and the circumstances surrounding their use. *Id.* Whether a contract is susceptible to multiple interpretations is a question of law. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9, 218 P.3d 1045, 1050 (App. 2009).

**¶12**        The two real estate contracts executed after the Heuschkels responded to an advertisement listing the Property for sale are the documents in question. The one-page Sale Agreement describes the Property, lists the "purchase price" as $100,000, and describes "lease deposits" to be paid monthly and subtracted from the total purchase price at closing. The lease deposits totaled $600 per month, $100 of which was to be paid to Lasa and $500 of which was to be "deducted from the total." The Sale Agreement lists Rebecca Lasa as the "Owner/Seller" and the Heuschkels as "Buyer." It also purports to convey clear, marketable title and full possession to the Heuschkels, closing "on or before 06/01/2003."

**¶13**        The three-page Commercial Lease lists the same property and outlines again that the Heuschkels are to pay $600 per month, "$500 to apply to Sale" and "$100.00/Lessor." The Commercial Lease states, in type-written addendum:

> This lease is Option to Purchase, until Owners Probate is satisfied. $500.00 to go toward sales agreement, and $100.00 to go to Rebecca Lasa for help with taxes or costs incurred while completing probate transactions. Sale agreement is $100,000/total."

It also states "As Purchaser; Lessee will be responsible for repairs."

¶14       Furthermore, at her deposition, Lasa testified that she intended to, and thought she did, sell the Property to the Heuschkels. The Heuschkels' affidavit states that they intended to purchase the Property, and explains that the lease was meant to be simply a "mechanism" to start making payments before probate was completed on the estates of the deceased owners.

¶15       Given the language of the contracts and the circumstances surrounding their execution, we agree with the trial court that the transaction purported to be a sale of the Property, rather than merely a lease. *See E-Z Livin' Mobile Sales, Inc.*, 26 Ariz. App. at 364–65, 548 P.2d at 1176–77 (analyzing intent of the parties in conjunction with the language of real estate contracts in determining that the parties intended a sale, rather than a lease, of real estate). The documents consistently indicate that the parties intended to sell, not just to lease, the Property. In addition, the full purchase price for the Property was ultimately paid in accordance with the contracts, further supporting the Heuschkels' claim that they entered the property under a claim of right.[2]

---

[2]   The statute of limitations for adverse possession began when the Heuschkels entered onto the property. In order to trigger the period for adverse possession to begin against co-tenants, an ouster must occur. *Morga v. Friedlander*, 140 Ariz. 206, 208, 680 P.2d 1267, 1269 (App. 1984). Entry by a purchaser under an executory agreement purporting to convey full title to property constitutes an ouster of all co-tenants. *See Snook v. Bowers*, 12 P.3d 771, 783 (Alaska 2000); *see also* Eric Larsson, Cause of Action for Ownership of Property by Adverse Possession Between Cotenants, 63 Causes of Action 2d 1, § 11 (2014). Regardless of the authority Lasa actually had, she purported to act on behalf of both original owners, and the Sale Agreement purported to transfer full title in the Property to the Heuschkels. Heuschkels' possession was therefore hostile as to any co-tenants, and the statutory period began to run when they took possession of the property.

¶16 For these reasons, we conclude that the relationship intended by the documents was not a landlord-tenant relationship. The Heuschkels logically believed they acquired legal title. They are, therefore, not barred from bringing an adverse possession claim. The trial court did not err.

### B. Hostile Possession and Claim of Superior Title

¶17 Bergmann/Young also assert that because the Heuschkels had permissive possession of the property, they cannot satisfy the element of hostility. In order for a claim to be hostile, the possessor of the property must intend and declare that he owns the land superior to both the true owner and the world. *Pleasant Country*, 173 Ariz. at 191, 840 P.2d at 1056. A permissive possessor, on the other hand, acknowledges that he holds the property subordinate to the title of the true owner. *Id.* at 190, 840 P.2d at 1055.

¶18 The Arizona Supreme Court has explained that there is a difference between permission to merely occupy land and permission to possess land with the design to confer legal title upon the possessor. *Tenney v. Luplow*, 103 Ariz. 363, 368–69, 442 P.2d 107, 112–13 (1968). Occupying land with the permission of the initial owner, while still claiming superior title to that of said owner, satisfies the hostility requirement. *Id.* In granting summary judgment, the trial court held that there was no genuine issue of material fact regarding whether the Heuschkels claimed superior title to the Property. We agree. The Heuschkels entered the Property immediately after the contracts were executed and treated it as if they were the true owners. They operated their business on the Property and made significant improvements to the Property as a result. They also paid the entire purchase price for the Property, as required by the Sale Agreement. And in 2010, before the statutory period had run and when they still had not been presented a clear title, they demanded that Lasa deliver title to them, indicating a belief that they were the rightful owners of the land. All of these actions are consistent with a claim of ownership, superior to that of the record title holder and all others.

¶19 Bergmann/Young claim the plain language of the real estate contracts indicates that the Heuschkels did not intend to acquire superior ownership. As discussed above, we disagree because the contracts purported to accomplish a sale rather than just a lease. *See supra* ¶¶ 13–16.

¶20 Bergmann/Young further claim that the Heuschkels expressly disclaimed ownership in the property when they sent the

demand letters directing the heirs to quitclaim their interest in the property. They argue that in these letters, the Heuschkels "admit they don't have title." The facts undermine the argument, however. By demanding that the heirs quitclaim their purported title to themselves, the Heuschkels were, in fact, asserting that they had a claim of ownership superior to that of the heirs. The demand letters were not an admission by the Heuschkels that their claim in the land was subordinate to that of the heirs. Moreover, such letters complied with statutorily approved procedure prior to instituting a quiet title action. *See* A.R.S. § 12-1101(A).

**¶21**    Accordingly, we find that the Heuschkels satisfied the hostility requirement. The trial court did not err in granting summary judgment in favor of the Heuschkels and quieting title to the Property in their favor.

## ATTORNEY FEES ON APPEAL

**¶22**    The Heuschkels have also requested an award of attorney fees on appeal pursuant to A.R.S. § 12-1103(B). In accordance with A.R.S. § 12-1103, the Heuschkels tendered quitclaim deeds and a check for $5.00 to Bergmann/Young in January 2012. In our discretion, therefore, we grant their request and will award an amount of reasonable attorney fees and taxable costs, subject to their compliance with ARCAP 21.

## CONCLUSION

**¶23**    For these reasons, we affirm the trial court's grant of summary judgment quieting title in favor of the Heuschkels.



Ruth A. Willingham · Clerk of the Court
FILED: ama